Shirley Temple SEIBER,
Plaintiff/Appellee,

v.

GREENBRIER INDUSTRIES, INC. and
Liberty Mutual Insurance Company,
Defendants/Appellants,

and

Sue Ann Head, Director, Division of Workers' Compensation, Tennessee Department of Labor, Second Injury Fund, Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

Sept. 20, 1995.

Deke V. Brackett and Gerald L. Gulley, Jr., Baker, McReynolds, Byrne, Brackett, O'Kane & Shea, Knoxville, for appellant.

Roger L. Ridenour, Ridenour, Ridenour & Fox, Clinton, for Appellee.

Charles W. Burson, Attorney General and Reporter, Dianne Stamey Dycus, Senior Counsel, Anne Widseth, Nashville, for Appellee Second Injury Fund.

### JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be denied; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Panel's opinion shall be published.

Cost will be paid equally by the parties and surety, for which execution may issue if necessary.

It is so ordered.

ANDERSON, C.J., not participating.

## IN THE SUPREME COURT OF TENNESSEE SPECIAL WORKERS' COMPENSATION APPEALS PANEL AT KNOXVILLE

Members of Panel: E. RILEY ANDERSON, Chief Justice, CLIFFORD E. SANDERS and WILLIAM H. INMAN, Senior Judges.

### MEMORANDUM OPINION

WILLIAM H. INMAN, Senior Judge.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tenn.Code Ann. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

The appellee was awarded 1197 weeks of compensation pursuant to a finding that she was totally and permanently disabled as a result of a work-related injury. Ten per cent of the liability was apportioned to the Second Injury Fund. The employer questions (1) the award and (2) the alleged inadequacy of the apportionment to the Second Injury Fund.

### I

The employee is 43 years old. She says that she cannot read or write, having completed only the fifth grade, and the evidence is clear that she has no marketable skills. In 1987, she suffered a herniated disc which resulted in 10 percent permanent disability, and her work history thereafter was uneventful until February, 1993 when she sustained a soft tissue, low-back injury as a result of falling in the restroom at her place of employment. According to the treating orthopedic physician, Dr. McMahon, who testified by deposition, Ms. Seiber reached maximum improvement on September 17, 1993 with a five percent medical impairment attributable to the restroom occurrence. We reproduce portions of his testimony in context:

Q And Dr. McMahon, did you further formulate an opinion, within a reasonable degree of medical certainty, as to whether Ms. Seiber would be able to return to gainful employment?

A At that point when I saw her on September 17th, because again of her history and findings, I felt she would never return to gainful employment.

Q Have you seen Ms. Seiber again since September 17, 1993?

A I have.

Q On what date?

A I saw her on February 15th of 1994.

Q Who referred her to you on that occasion?

A Dr. Ellison asked her to return to see me again.

Q When you saw her on that date, did she provide to you another history?

A Yes, she did.

Q What was that history?

A Primarily that she had continued to have pain in her low back and right leg similar to what she had had for the last year and that Dr. Ellison had repeated an MRI which showed some different changes and that he wanted me to see her for that.

Q Did you have the opportunity to see the MRI scan?

A Yes, I did.

Q Are the results of that MRI scan a part of your office file?

A Yes, sir, they are.

Q Did you use the results of the MRI scan in your treatment of Ms. Seiber?

A I did.

Q What are the results of the latest MRI scan?

A What they essentially showed was similar findings to the MRI done almost a year prior to that except on this MRI it showed what appeared to show an HNP at L3–L4.

Q By HNP, what do you mean?

A Herniated disc or at least a bulging disc.

Q Dr. McMahon, did that cause you to alter, change or amend your original permanent physical impairment rating or your opinion as to her being able to seek gainful employment?

A No, sir.

Q What type of patient has Ms. Seiber been for you during the entire time you have been treating her?

A She's been fine.

MR. RIDENOUR: You may ask, Mr. Brackett.

## CROSS–EXAMINATION

BY MR. BRACKETT:

Q Doctor, when you reviewed that last MRI, were you able to form an opinion, based upon a reasonable degree of medical certainty, as to whether there is any causal relation between that new HNP and her fall at work?

A No, sir, I could not. And since we had an MRI after the fall at work that did not show that and had this MRI done seven months later that did show it, I don't think I could say that it was a result of the fall.

There was no further medical proof offered.

A vocational expert, Dr. Colvin, testified that he believed Ms. Seifer was totally occupationally disabled. On cross-examination, however, he testified that the "ruptured disc of unknown origin ... played no part" in his opinion, and that the 1987 back injury "would have resulted in occupational disability of 25 to 30 percent." Ms. Seiber testified that she conferred with Dr. Colvin only on one occasion before trial, and that he administered no tests and conducted no functional studies.

## II

■ Appellate review is *de novo* on the record accompanied by a presumption of correctness unless the evidence preponderates against the judgment. *Rule 13(d), T.R.A.P.* In *pari materia* with this familiar rule of appellate practice is the equally settled rule that the appellate court is as well situated to gauge the weight, worth and significance of depositional testimony as the trial judge. *Hohenberg Bros. Co. v. Missouri P.R.R.*, 586 S.W.2d 117 (Tenn.App.1979).

Since the plaintiff's work-related injury occurred after August 1, 1992, an award of workers' compensation benefits must be determined under the Workers' Compensation Reform Act, which establishes a limit on benefits for injuries to the body other than to scheduled members. See, T.C.A. §§ 50–6–241, 50–6–242.

Pursuant to T.C.A. § 50–6–241(a), the maximum permanent partial disability award which an injured employee may receive if the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury is 2½ times the medical

impairment rating. If the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability award is six times the medical impairment rating. T.C.A. § 50–6–241(b). A medical impairment rating must be determined pursuant to the provisions of the AMA Guides to the Evaluation of Permanent Impairment, the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment or, in cases not covered by either of these, by any appropriate method used and accepted by the medical community. T.C.A. § 50–6–241(a).

In making a determination of a permanent partial disability award, the court is required to consider all pertinent factors including the employee's age, education, skills and training and capacity to work. T.C.A. § 50–6–241.

The court has the authority to award permanent partial disability benefits, not to exceed 400 weeks, in excess of the maximum disability award under T.C.A. § 50–6–241(a)(2) or (b), in appropriate cases, where permanent medical impairment is found. To exceed the maximum disability award provided by T.C.A. § 50–6–241(a)(2) or (b), the trial court must find clear and convincing evidence that the employee meets at least three of the following four criteria under T.C.A. § 50–6–242:

> (1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight level;
>
> (2) The employee is age 55 or older;
>
> (3) The employee has no reasonably transferrable job skills from prior vocational background and training; and
>
> (4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

■ Ms. Seiber had a maximum medical impairment rating of 15 percent after the February 13, 1993 injury, which includes the five percent permanent impairment resulting from the February 13, 1993 injury and the prior 10 percent permanent disability from the 1987 injury. Because she was not able to return to her employment, the maximum permanent disability the plaintiff was entitled to receive under T.C.A. § 50–6–241(b) was 90 percent. However, under the provisions of T.C.A. § 50–6–242, the trial court had the authority to award the plaintiff additional benefits, not to exceed 400 weeks, in the aggregate, if she met at least three of the four criteria, which she did. But the award was not limited to 400 weeks; rather, the plaintiff was awarded lifetime benefits pursuant to T.C.A. § 50–6–207(4)(A), which was erroneous.

Under the provisions of T.C.A. § 50–6–241, the legislature has indicated its intent that permanent disability awards for injuries other than to scheduled members shall be limited to a maximum disability award of six times the medical impairment rating. If the medical impairment rating is less than 16.7 percent, the employee may not be found to be totally disabled within the ambit of T.C.A. § 50–6–207(4)(A), but the disability award must be determined pursuant to T.C.A. § 50–6–241. In cases where an employee has a greater vocational disability than allowed by the multipliers in T.C.A. § 50–6–241, on account of age, lack of education or lack of employment opportunities, the statute provides that such employee may be awarded up to 400 weeks of benefits, T.C.A. § 50–6–242. But such employees do not qualify for lifetime benefits and are limited to a maximum award of 400 weeks.

■ In construing a statute, the basic rule is to ascertain and give effect to the intent and purpose of the legislature. *Carson Creek Vacation Resorts, Inc., v. State Department of Revenue*, 865 S.W.2d 1 (Tenn. 1993). Legislative intent is determined by looking at the entire statute and in light of the overall purpose of the legislation. *West American Insurance Company v. Montgomery*, 861 S.W.2d 230 (Tenn.1993).

■ The purpose of the Workers' Compensation Reform Act is to provide benefits to injured employees while limiting employer liability so as to keep workers' compensation insurance affordable and available for all employers. The provisions of T.C.A. § 50–6–241 encourage employers to retain injured workers at wages equal to or greater than

the wages received prior to the injury by providing for lesser disability awards if the employee is retained. As we have said, if the injured employee meets certain criteria under T.C.A. § 50–6–242 this award may be increased to a maximum of 400 weeks. Since the plaintiff meets three of the four criteria and is permanently and totally disabled from gainful employment she is entitled to 400 weeks of benefits. The employee would have been entitled to the benefits afforded by Tenn.Code Ann. § 50–6–207(4)(A) had her total medical impairment rating equalled or exceeded 100 percent after applying the multipliers contained in Tenn.Code Ann. § 50–6–241.

### III

The employer and its insurer insist that the trial court erred in finding that the Second Injury Fund is liable only for 10 percent permanent disability as contrasted to the undisputed evidence that the employee had a pre-existing vocational disability of 30 percent.

The liability of the Second Injury Fund is determined in this manner: First, if an injured employee has previously sustained a permanent physical disability from any cause or origin and subsequently becomes permanently and totally disabled, the Second Injury Fund will pay the difference between the amount received by the injured employee for the second injury and the amount to which he would be entitled in order to be compensated for his total disability. T.C.A. § 50–6–208(a); *Smith v. Liberty Mutual Insurance Company*, 762 S.W.2d 883, 885 (Tenn.1988). Second, if an injured employee has received a prior workers' compensation award or awards for permanent disability to the body as a whole and the combination of such awards equal or exceeds 100 percent permanent disability to the body as a whole, then the Second Injury Fund is liable for benefits due to the employee in excess of 100 percent. T.C.A. § 50–6–208(b); *Sitz v. Goodyear Truck Tire Center*, 762 S.W.2d 886 (Tenn. 1988).

■ In this case, the liability of the Second Injury Fund must be determined under T.C.A. § 50–6–208(a), because there is no evidence in this record that Ms. Seifer received any approved compensation award.

■ The employer and its insurer argue that the Second Injury Fund should be held liable for more than 10 percent permanent disability because the vocational expert testified that the plaintiff was 25 percent to 30 percent vocationally disabled after the 1987 injury based on the medical restrictions applicable to this injury. This testimony was contrary to that of the plaintiff who testified that she recovered from the 1987 injury and subsequent surgery and had no restrictions. She was able to work from 1987 to 1993 trouble free and testified that she did not think she had any permanent disability after the 1987 injury. We cannot find that the apportionment of 10 percent to the Second Injury Fund is contrary to the weight of the evidence. *Rule 13(d), T.R.A.P.*

The judgment is modified to provide that the appellee is entitled to recover benefits for 400 weeks. In other respects it is affirmed, with the costs taxed equally to the parties. The case is remanded for all appropriate purposes.

ANDERSON, C.J., and CLIFFORD E. SANDERS, Senior Judge, concur.