## IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE

**FOR PUBLICATION**

| | | |
|---|---|---|
| VERNON RAY DAVIS, | ) | Filed: __**September 8, 1997**__ |
| | ) | |
| Plaintiff/Appellee, | ) | No. 03S01-9603-CV-00034 |
| | ) | |
| v. | ) | HON. WILLIAM R. HOLT, JR., |
| | ) | JUDGE |
| JIM REAGAN and HOWARD SEXTON, | ) | |
| d/b/a PRECISION CONSTRUCTION | ) | SEVIER CIRCUIT |
| CO.; and TRAVELERS INSURANCE | ) | |
| CO., | ) | |

FILED

**September 8, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| Defendants/Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LARRY BRINTON, JR., Director of | ) | |
| Worker's Compensation, Tennessee | ) | |
| Dept. of Labor, Second Injury Fund, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | | |
| and | | |
| | | |
| BESSIE LOU RAYFIELD, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | NO. 03S01-9602-CV-00009 |
| | ) | |
| v. | ) | HON. WILLIAM R. HOLT, JR., |
| | ) | JUDGE |
| EMPLOYERS INSURANCE COMPANY | ) | |
| OF WAUSAU; and ED SMITH, d/b/a | ) | SEVIER CIRCUIT |
| DAYS INN OF PIGEON FORGE, | ) | |
| | ) | |
| Defendants/Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LARRY BRINTON, TENNESSEE | ) | |
| DEPT. OF LABOR, DIVISION OF | ) | |
| WORKERS' COMPENSATION, | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

FOR APPELLEE:

R. B. Hailey
Frank Q. Vettori
Knoxville

FOR APPELLANT, SECOND INJURY FUND:

John Knox Walkup
Attorney General & Reporter

Dianne Stamey Dycus
Senior Counsel, Attorney General's Office

# O P I N I O N

TRIAL COURT JUDGMENTS AFFIRMED                    HOLDER, J.

**OPINION**

We granted this consolidated appeal to determine whether permanent total disability can be awarded when an anatomical disability rating is less than 16.7 percent. In Seiber v. Greenbrier Industries, Inc., 906 S.W.2d 444 (Tenn. 1995), this Court adopted a panel decision holding that the limits in Tenn. Code Ann. § 50-6-241 (1996 Supp.) precluded an award of total disability when the anatomical impairment was less than 16.7 percent. A later, but unpublished, workers' compensation panel decision held that the limitations in Tenn. Code Ann. § 50-6-241(b) are not applicable to permanent total disability claims. Warren v. Twin City Fire Ins. Co., No. 03S01-9506-CV-00061 (Nov. 29, 1995, at Knoxville). We granted review to reconcile these two cases and decide this issue. For the reasons explained below, we agree with the panel's findings in Warren and hold that Tenn. Code Ann. § 50-6-241's limitations on permanent partial disability do not apply to awards of permanent total disability.

**BACKGROUND**

Vernon Ray Davis and Bessie Lou Rayfield had received prior workers' compensation awards. Both sustained subsequent work-related injuries and received anatomical ratings of less than 16.7 per cent. Davis' subsequent injury caused an additional ten percent anatomical impairment. Rayfield's physician attributed fifteen percent of her total anatomical rating to her most recent work-related injury. Both were adjudged permanently and totally disabled under Tenn. Code Ann. § 50-6-207(4) (1991 Repl.).

Both cases were appealed and argued before special workers' compensation appeals panels. The cases were consolidated and transferred to this Court. The parties were ordered to "file supplemental briefs on the issue of

2

whether the multiplier maximums provisions in Tenn. Code Ann. § 50-6-241 & -242 apply to findings of permanent total disability."

## STATUTORY CONSTRUCTION

The appellants, the Second Injury Fund and the workers' compensation carriers, assign error to the trial courts' decisions to award permanent total disability benefits. They assert that Tenn. Code Ann. § 50-6-241 prohibits awards of permanent total disability because both Davis' and Rayfield's most recent medical impairment ratings were less than 16.7 percent. We disagree.

Our Workers' Compensation Act classifies compensable occupational disabilities into four distinct classifications. These classifications are: (1) temporary total disability; (2) temporary partial disability; (3) permanent partial disability; and (4) permanent total disability. Tenn. Code Ann. § 50-6-207(1)-207(4) (1996 Supp.). This Court has previously recognized that each separate disability classification is independent and serves a specific compensation goal. Roberson v. Loretto Casket Co., 722 S.W.2d 380, 383 (Tenn. 1986); Redmond v. McMinn County, 354 S.W.2d 435, 437 (Tenn. 1962). The issue in controversy involves the interrelation of both permanent total and permanent partial disability and a statute specifically limiting permanent partial disability awards.

Awards for permanent partial disability are governed by Tenn. Code Ann. § 50-6-207(3)(A) -207(F) (1996 Supp.). An employee sustaining either a disability to a scheduled member or a disability adjudged both permanent and partial to the body as a whole may be eligible for permanent partial disability benefits. Permanent partial benefits are paid either as scheduled or for a period of up to 400 weeks. Id.; Tenn. Code Ann. § 50-6-241 & 242 (1996 Supp.).

3

The statutory definition of total disability focuses on an employee's ability to return to gainful employment. Employees who are totally incapacitated from gainful employment by work-related disabilities not otherwise specifically provided for under the Act are statutorily classified as "totally disabled." Disabled workers falling within the purview of the "total disability" definition shall be paid permanent total disability benefits pursuant to Tenn. Code Ann. § 50-6-207(4)(A) (1996 Supp.).

In 1992, the legislature limited permanent partial disability awards. These limits as codified provide in pertinent part:

> For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, pursuant to § 50-6-207(3)(A)(I) and (F), and the pre-injury employer returns the employee to employment at a wage equal to or greater than the employee was receiving at the time of the injury, the maximum permanent partial disability award the employee may receive is two and one half (2 ½) times the medical impairment rating . . . and [if] the pre-injury employer does not return the employee to employment at a wage equal to or greater than the employee was receiving at the time of the injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating.

Tenn. Code Ann. § 50-6-241(a)(1) & (b) (1996 Supp.). Accordingly, the statute places limitations on that subset of disabilities that are: (1) not scheduled; and (2) adjudged to be permanent partial.

A recent panel decision, however, held that the limitations contained in § 50-6-241 were also applicable to awards of permanent total disability. In Seiber v Greenbrier Industries, Inc., 906 S.W.2d 444 (Tenn. 1995), a panel held that § 50-6-241 precluded a trial court from awarding total disability benefits when the anatomical disability rating was less than 16.7 percent. The panel reasoned that under § 50-6-241, the legislature had indicated an intent to limit "permanent disability awards" to six times the impairment rating. Id. at 447. The panel then adopted a mathematical approach to assessing permanent total disability claims. Id.

4

We disagree with the analysis in <u>Seiber</u>. First, the legislature has explicitly indicated an intent to limit permanent <u>partial</u> disability awards and not "permanent disability awards" in general. Next, total disability as statutorily defined is not based on a purely objective assessment or an anatomical mathematical computation. <u>See</u> <u>generally</u> <u>Corcoran v. Foster Auto GMC, Inc.</u>, 746 S.W.2d 452, 458 (Tenn. 1988) (holding vocational disability is based on both lay and expert testimony and is not restricted to precise disability estimates made by experts). The definition instead focuses on the injured employee's ability to earn wages.

Lastly, <u>Seiber's</u> holding was premised on effectuating legislative intent from the entire statutory scheme. The panel noted that "[t]he purpose of the Workers' Compensation Reform Act [was] to provide benefits to injured employees while limiting employer liability so as to keep workers' compensation affordable . . . ." <u>Seiber</u>, 906 S.W.2d at 447. The panel then found that the purpose of Tenn. Code Ann. § 50-6-241 was to "encourage employers to retain injured workers at wages equal to or greater than received prior to the injury by providing for lesser disability awards if the employee is retained." <u>Id</u>. at 447-48.

Legislative intent, however, shall be derived from a statute's face when the statutory language is unambiguous. <u>Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.</u>, 892 S.W.2d 428, 435 (Tenn. Ct. App. 1994); <u>see</u> <u>Carson Creek Vac. Resorts, Inc. v. Dept. of Rev.</u>, 865 S.W.2d 1, 2 (Tenn. 1993) (stating where language within four corners of statute is plain, clear, and ambiguous, intent shall be derived from statute's face). If a statute's language is expressed in a manner devoid of ambiguity, courts are not at liberty to depart from the statute's words. <u>Id</u>. Accordingly, courts are restricted to the "natural and ordinary" meaning of a statute unless an ambiguity necessitates resorting

5

elsewhere to ascertain legislative intent. <u>Austin v. Memphis Publ. Co.</u>, 655 S.W.2d 146, 149 (Tenn. 1983).

We find Tenn. Code Ann. § 50-6-241's language unambiguous. The statute requires a threshold finding that the employee is eligible to receive permanent partial disability benefits. Moreover, the legislative language in § 50-6-241 narrows its application to those specific subsections or claims of permanent partial disability falling within the purview of "[Tenn. Code Ann.] § 50-6-207 3(A)(I) and (F)." This narrowing language does not lend a legitimate inference that the legislature intended the limitations in § 50-6-241 to encompass all forms of permanent disability.

We are unpersuaded by <u>Seiber's</u> implication that Tenn. Code Ann. § 50-6-242 (1996 Supp.)[1] provides the remedy for workers who would otherwise be considered totally disabled had their anatomical rating been 16.7 percent or

---

[1] Tennessee Code Annotated § 50-6-242 permits a trial judge to award

permanent partial disability benefits, not to exceed four hundred (400) weeks, in appropriate cases where permanent medical impairment is found and the employee is eligible to receive the maximum disability award under § 50-6-241(a)(2) or (b).

Awards under Tenn. Code Ann. § 50-6-242 are predicated upon finding three of the following four criteria applicable:

1. The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;

2. The employee is age fifty-five (55) or older;

3. The employee has no reasonably transferrable job skills from prior vocational background and training; and

4. The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

We note that criteria four speaks in terms of "reasonable employment opportunities" whereas total disability is defined as the inability to work "at an occupation which brings such employee an income." Tenn. Code Ann. § 50-6-207(4)(B).

6

greater. Section 50-6-242, by explicit statutory language, is applicable only to that subset of permanent partial disability claims in which the employee is eligible to receive the maximum disability award under Tenn. Code Ann. § 50-6-241(a)(2) or (b). Accordingly, if the claim does not fall within the purview of § 50-6-241(a)(2) or (b), courts simply cannot proceed to § 50-6-242.

We find the statutory provisions of the Workers' Compensation Act set forth the following procedures for assessing work-related permanent disabilities. The initial inquiry is:

(1)     Whether the disability is to a scheduled member (i.e., enumerated)?

An affirmative answer to question one mandates that the employee's award be as enumerated. If, however, the disability is non-enumerated, the pertinent question becomes:

(2)     Whether the employee is totally incapacitated from working at an occupation that generates an income?

If question two is answered affirmatively, the employee is eligible for total disability benefits. If, however, the employee is able to work at an occupation that generates an income, the trial court proceeds to § 50-6-241. If certain conditions are satisfied under § 50-6-241, the trial court may then proceed to § 50-6-242. The inquiries then become: whether the job opportunities available are reasonable; whether the employee has reasonable job skills that are transferrable; whether the employee is fifty-five or older; and whether the employee meets specific statutory education criteria.

Both the procedures established by the Workers' Compensation Act and the plain and ordinary language of Tenn. Code Ann. § 50-6-241 convey a specific legislative intent to limit § 50-6-241's application to awards of permanent partial disability. We, therefore, hold that § 50-6-241 is inapplicable to permanent total disability and does not preclude a trial judge from awarding

7

permanent total disability merely because an anatomical impairment rating is less than 16.7 percent.

Holding that § 50-6-241's limitations are inapplicable to permanent total disability does not contravene the policy of employee retention as enunciated in Seiber. To the contrary, employers will be encouraged to find positions that accommodate work-related disabilities to avoid adjudications of total disability and payment of lifetime benefits. If, however, injured workers are "totally disabled" as statutorily defined, applying the limitations of § 50-6-241 to their claims does not advance the policy of employee retention. Totally disabled workers, by definition, are incapable of earning wages or being retained. Accordingly, applying § 241 to the permanent total disability subsection on the basis of encouraging employee retention is simply illogical.

The parties have briefed additional issues. We have reviewed those issues and find them devoid of merit. For the reasons discussed in this opinion, we affirm the trial courts' judgments. Costs of this appeal are taxed to the appellants, Second Injury Fund and the workers' compensation carriers, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

CONCURRING:

Drowota, Reid, Birch, JJ.
Anderson, C.J., not participating

8