IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2003 Session

## ESTELLE C. FRAME v. KENNETH FRAME, JR.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 138592-9     The Honorable Robert L. Childers, Judge**

---

**No. W2002-00490-COA-R3-CV - Filed November 21, 2003**

---

This is a father's appeal of an order which, *inter alia*, increased a child support obligation based upon the finding of willful and voluntary unemployment. On mother's motion, the appeal is dismissed for failure to timely file a notice of appeal pursuant to Tenn. R. App. P. 4.

**Tenn. R. App. P. 3; Appeal as of Right; Appeal Dismissed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

William M. Monroe, Memphis, For Appellant, Kenneth Frame, Jr.

Larry Rice and Laura D. Rogers, Memphis, For Appellee, Estelle C. Frame

### OPINION

This case involves an appeal of a trial court order increasing a father's child support obligations premised on the court's finding that father was willfully and voluntarily underemployed. The union of defendant Kenneth Frame, Jr. ("Father" or "Defendant"), and plaintiff Estelle C. Frame ("Mother" or "Plaintiff"), was terminated pursuant to a final decree of divorce on July 1, 1992.[1] The court's decree awarded custody of the parties' minor child to Mother, and detailed Father's child support obligations as follows:

> The Defendant's net income is greater than $6,250 per month and therefore it would be neither appropriate nor equitable to apply the Child Support Guidelines. It is in the child's best interest to be

---

[1] At the time of the divorce, Father owned a grocery coupon redemption business operating under the name Grocer's Coupon Redemption, Inc.

awarded $1,000 per week, and her monthly expenses support said award of child support.[2]

On December 6, 1996, Father filed the first of several petitions to modify the court's final decree of divorce. In his petition, Father moved the court to modify the paragraph of its final decree requiring him to establish and fund a trust in his child's name. Alternatively, Father sought modification of all of the other financial provisions listed in the decree, "including, but not limited to the One Thousand Dollars per week child support which is being paid, the Five Hundred Dollars per week alimony, the Five Hundred Dollar per month clothing allowance to the minor child, [and] the private school tuition...." In support of his requests, Father noted that he drew a gross salary of $156,000.00 per year from his grocery coupon redemption business. Father's annual net income from this business totaled approximately $100,000.00.

Father filed an amended petition to modify the court's final decree on May 5, 1997, noting that "[t]he instant Petition arises out of a different factual situation, and deals with issues different and distinct from those which brought rise to the December 6, 1996 Petition. However, this Petition is technically an "Amended" Petition, due to the alternative relief sought in the December 6, 1996 Petition." Father's amended petition sought a modification of his alimony and child support obligations in an amount "commensurate to his ability to pay," stating as grounds for relief the following facts:

> [A] substantial and material change of circumstances has occurred in that the business of the Petitioner's Grocers Coupon Redemption has suffered severe financial setbacks since February of 1997, and is on the verge of shutting down. These financial setbacks are through no fault of the Petitioner, but are a result of normal and ordinary business problems.

---

[2] The court's final decree incorporated by reference the parties' Marital Dissolution Agreement. Pursuant to this agreement, the parties agreed that Father would pay $1,000.00 per week in child support. The agreement further provided:

> To the extent there is at least a 5% increase in Husband's income in one calendar year, beginning with 1993, child support will increase according to the same percentage. In no event will the child support drop below $1000.00 per week, nor above $2,000.00 per week.

The parties' agreement additionally required Father to pay the child's private school tuition, medical insurance expenses, and "up to $500.00 per month as a clothing allowance."

The Respondent has not been able to pay himself any salary since February of 1997. Additionally, many current expenses of the business remain unpaid.

Furthermore, in an effort to keep the business operating, the Petitioner has had to put approximately $40,000.00 of his own money into the business in the past thirty (30) days. Unfortunately, Petitioner's financial resources are severely limited and is unable to continue doing this for any period of time.

On December 10, 1997, Father filed a petition titled "Petition for Scire Facias and Citation for Contempt; Petition to Enforce Specific Visitation Rights; for Injunctive Relief; and/or Petition for Change of Custody." As the basis for his petition(s), Father stated to the court that there "have been numerous occasions in the past where [Mother] has willfully and intentionally interfered with the visitation schedule" as set forth in the Marital Dissolution Agreement. Father further alleged that Mother habitually made disparaging remarks about him to the minor child, and even asked the child to steal documents from the his home.

A Consent Order was filed on September 14, 1998 addressing the allegations and claims set forth in Father's several petitions.[3] Pursuant to this order, the parties agreed, in part, to reduce Father's child support obligations to $400.00 per month, effective September 1, 1998. In the event Father realized an increase in income, the parties agreed to adjust the monthly support total as follows:

> At such time as the income of Kenneth J. Frame, Jr. increases fifteen percent (15%), Kenneth J. Frame, Jr., shall be obligated to automatically increase his monthly child support obligation, accordingly. Thereafter, at each fifteen percent (15%) increase income, Kenneth J. Frame, Jr., shall voluntarily increase his monthly child support obligation accordingly.

Mother agreed not to hold Father liable for due and owing child support obligations, recognizing that such debt arose from his drastic decrease in income. Father agreed to continue payment of medical insurance and expenses for the parties' child. The court's order further provided:

> All other obligations listed under the section entitled "Child Support" in the original Marital Dissolution Agreement filed June 17, 1992, are hereby declared null and void, and Kenneth J. Frame, Jr. no

---

[3] The court's order entered judgment on Father's Petition to Modify, Amended Petition to Modify, Petition for Scire Facias and Citation for Contempt, Petition to Enforce Specific Visitation Rights, Petition for Injunctive Relief and/or Petition for Change of Custody.

longer has any responsibility to perform any of those duties set out
therein, except as to those enunciated in this agreement.

On March 31, 1999, Mother filed a "Petition to Require Counseling,[4] Modify Child Support, to Add Pamela Lawrence Frame[5] as a Party and for Contempt." In support of her petition to modify, Mother alleged that Father "has income or access to income that would justify an increase to his monthly child support obligations." Mother thereby requested the court to increase Father's child support payments in accordance with his "income and lifestyle."

Mother filed another Petition for Contempt on September 15, 2000. Her petition noted defendants' continued refusal to attend counseling, and further sought to modify the court's September 14, 1998 order by increasing Father's child support payments in accordance with "his income and current lifestyle." In support of her request for modification, Mother alleged:

Respondent's, Kenneth Frame Jr., income has increased since the order of this Court in September of 1998. Respondent has income or access to income that would justify an increase to his monthly child support obligations.

Respondent, Kenneth Frame Jr., has willfully disobeyed the order of this Court, although able and capable of complying with said orders, by refusing to increase his monthly child support obligation as his income increased.

On November 14, 2000, Father filed a petition styled "Petition for Citation for Contempt; Petition to Modify the Final Decree for Change of Custody to the Defendant, Kenneth J. Frame." Shortly thereafter, he filed a "Petition for Scire Facias and Citation for Contempt and for Injunctive

---

[4] On July 22, 1999, Mother filed a motion for counseling, requesting that the court order the parties involved, to wit Estelle Frame, Kenneth J. Frame, Jr., Pamela Lawrence Frame, and the minor child to attend counseling. By order entered August 23, 1999, the court ordered the afore named parties to undergo counseling with Dr. Patricia Millikin. The court specified that "[e]ach party will pay for their own counseling and Kenneth J. Frame, Jr. will continue to pay for the counseling of his daughter."

Mother filed a Petition for Contempt on October 28, 1999, citing Father's and Pamela Lawrence Frame's "willful" refusal to attend counseling as ordered by the court. On May 17, 2000, Mother filed an Amended Petition for Contempt, adding that Father refused to pay for his child's counseling in direct violation of the court's order. Mother noted that Father further disobeyed the court's directive by liquidating his daughter's savings account and thereby "refusing to place the funds in an account jointly held by Estelle Frame."

Mother eventually filed a motion to amend her petition for contempt to remove "allegations as to [defendants'] failure to attend counseling." This motion was not included as part of the record in this matter; however, the court's order granting Mother's motion was made part of the record.

[5] Pamela Lawrence Frame is Father's current wife. A Consent Order was filed on July 20, 1999, adding Pamela Lawrence Frame as a defendant in this matter.

Relief."[6] Mother filed a Motion to Dismiss these petitions on February 2, 2001, alleging that Father's petitions were filed for the purpose of harassing Mother, and that Father was further acting with "unclean hands" in light of his willful and repeated violations of the court's orders.

On May 7, 2001, Father filed a Motion to Strike Mother's petition to modify the court's final decree and her contempt petition. In support of his motion, Father alleged:

> All of the matters set forth in [Mother's] Petition to Modify Final Decree of Absolute Divorce and the Amended Petition to Modify Final Decree of Absolute Divorce as to child support were both known and knowable at the time that the Consent Order was entered into in this cause in September of 1998.

Father additionally argued that "[t]he Petitioner in this case has brought the same, or nearly the same cause of action which resulted in the entry of a consent Order in September of 1998."

A non-jury trial was held in early May 2001. The testimony at trial was undisputed that Father's grocery coupon redemption business failed in December 1997, through no fault of Father. Father acknowledged that his "normal" annual salary from this business totaled approximately $150,000.00.

After the closing of his grocery coupon redemption business, Father testified that he began working in the wholesale car industry in or around October 1997. Father noted that the wholesale car business in which he was involved took a significant downturn when his business partner suffered a family tragedy and the car lot from which the business operated closed in 2000. Father acknowledged that he still held the title to several cars, but noted that he had sold "very few cars" since May 1999. When asked to describe "what [he's] done to earn a living" since the first of the year 2001, Father answered that he had tried his hand in the drywall construction, and was currently pursuing an ATM business.

When questioned regarding his annual income for the period spanning the years of 1998 through 2000, Father stated his income for 1998 as $18,000.00, and $17,500.00 for 1999. Father could not recall or testify to his annual income for the tax year 2000. Moreover, Father produced no records or statements of income for the tax years 1998 through 2000. Father acknowledged that despite his income, he maintains a $100,000.00 per year lifestyle.

---

[6] From our reading of Father's pleadings, we find that the grounds set forth in support of said pleadings are not pertinent to the issues at hand in this matter and therefore require no further explanation or examination.

In addition to testifying about his reported annual income, Father acknowledged that his home was recently appraised at a value of $288,400.00.[7] Father testified that he owned several pieces of jewelry, valued at a combined total of more than $14,000.00, and that he owned guns valued at a combined total of approximately $2,300.00.

Father testified that he was forced to sell several items of personal property and "cut back to the basics" as a result of his decreased income. Father noted that he sold two watches, a slot machine, business furniture and equipment, his 1996 Lincoln Town Car, and theater tickets. In addition, Father testified that he has "curtailed [his] social life and traveling dramatically."[8]

The court filed several orders on July 17, 2001, addressing the various pleadings of the parties. The court's first order denied Father's Motion to Strike. In a separate order, the court denied Father's Petition for Citation for Contempt, and his Petition to Modify the Final Decree for Change of Custody. The court further denied Mother's Motion to Dismiss Father's "Petition for Scire Facias and Citation for Contempt and for Injunctive Relief," and his "Petition for Citation for Contempt, Petition to Modify the Final Decree for Change of Custody to the Defendant."

On this same day, the court filed an order on Mother's contempt petition and her petition seeking modification of child support. The court's order additionally addressed Father's "Petition for Scire Facias and Citation for Contempt and Injunctive Relief." Pursuant to this order, the court denied Father's petition(s), and granted Mother's petition in part. In support of its ruling, the court made the following findings of fact:

> 1. Mr. Kenneth Frame, Jr. was a very successful business man for 18 years and had an income of One Hundred Fifty Thousand Dollars ($150,000.00) per year.
>
> 2. Through no fault of his own he was forced to cease the operation of his business, Grocer's Coupon Redemption, in 1997.
>
> 3. Mr. Frame voluntarily continued to pay the court ordered [child] support until November, 1997.
>
> 4. The parties entered into a consent order in September of 1998 reducing Mr. Frame's monthly child support obligation.

_____

[7] Father testified that he took out a second mortgage on his home for $50,000.00. According to his testimony, Father used this money to purchase cars for his business and for various personal expenses. Father noted that his current monthly mortgage payments total approximately $1,656.00.

[8] Despite this assertion, Father admitted to spending significant amounts of money on social dinners, and acknowledged that he spent several hundred dollars on ski lessons while on a business/personal trip to Wyoming.

5. In March of 1999, a petition was filed by Ms. Estelle Frame to modify Mr. Frame's child support payments.

6. Mr. Frame is voluntarily underemployed.

7. Mr. Frame has maintained essentially the same life style that he maintained before his business failed and has not sold his house, jewelry, or guns.

8. Mr. Frame's lifestyle indicates that he is making more money than he stated in the trial and in his deposition.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

12. Mr. Frame has not supported his daughter to the best of his ability and he failed to take reasonable steps to regain employment that would have brought him comparable income.

13. Mr. Frame should have been able to find comparable work within twelve (12) months of his company's closure.

14. Mr. Frame has the ability to earn at least $90,500 per year.

On the basis of these findings of fact, the trial court increased Father's child support obligations to $1,100.00 per month, said increase effective September 1, 1999. The court awarded Mother the following additional relief:

Mr. Frame owes Estelle Frame the amount of $14,700.00 for child support arrearages, which is reduced to judgment.

Mr. Frame owes to Estelle Frame, as child support, the amount of $30,000.00 for attorney fees incurred in this matter, which is reduced to judgment.

Mr. Frame owes to Estelle Frame, as child support, the amount of $2,205.48 for expenses incurred in bringing this action, which is reduced to judgment.

In response to the court's July 17, 2001 order, Father filed a motion pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure. Father's motion sought the following relief from the court's order:

1. That upon a final hearing of this Motion, the Court grants the Defendant's Motion to Strike or for Directed Verdict, pursuant to Rule 50.02 of the Tennessee Rules of Civil Procedure; or grant a new trial pursuant to Rule 59.02 of the Tennessee Rules of Civil Procedure; or issue an Order altering or amending judgment of this Court in regard to imputed income and child support, pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure.

2. That upon a final hearing of this Motion, the Court grant the Defendant relief, pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, in that the grounds upon which the Trial Court's decision was based, has been reversed or otherwise vacated, or is no longer equitable that a judgment should have prospective application; or that there are other appropriate reasons for justifying relief from the judgment, as the Court may deem just and proper.

The court denied Father's motion by order entered November 21, 2001. The court's order additionally amended its July 17, 2001 order to state that Father was 'willfully and voluntarily underemployed.'

On February 27, 2002, Father filed a Notice of Appeal from the court's July 17, 2001 and November 21, 2001 orders. On May 15, 2002, Mother filed a Motion to Dismiss in this Court, for Father's failure to file a timely notice of appeal.

On May 22, 2002, this Court entered an Order denying Mother's Motion to Dismiss. We noted, however, that "[t]his Order should not be construed as preventing the Appellee from raising this issue in her appellate brief."

In April 2003, Father filed a Motion for Consideration of Post-Judgment Facts in the Appellate Court, requesting this Court to consider his Chapter 7 Bankruptcy Petition and Schedule detailing his liabilities and assets in the bankruptcy estate. By Order entered June 5, 2003, this court granted Father's motion "insofar as it discloses that the Appellant filed a Chapter 7 Bankruptcy Petition on October 30, 2001," but denied the remainder of the motion.

Father raises the following issues in his brief to this Court:

I. Did the Court err in hearing this Petition in that all of the allegations contained in said Petition are barred by the Doctrine of Res Judicata? Appellant asserts that all of the allegations as to unemployment or under-employment were both known and knowable at the time that a Consent Order was entered into in this cause in September of 1998.

II. Under Tennessee law, is a non-custodial parent willfully and voluntarily unemployed or underemployed when he loses his job through no fault of his own and he has made reasonable efforts to obtain employment similar to his previous employment?

However, we will first consider Mother's motion to dismiss for failure to file a timely notice of appeal. The order appealed was entered July 17, 2001, and on July 25, 2001, Defendant filed a timely motion, pursuant to Tenn. R. Civ. P. 59. The court entered its order overruling the Rule 59 motion on November 21, 2001.

Pursuant to Tenn. R. Civ. P. 4 (a) and (b), a notice of appeal must be filed within thirty (30) days after the date of entry of the judgment or if the timely motion as specified is filed within thirty (30) days of the entry of the order denying the timely filed motion. Thus, under the circumstances of the instant case, the filing of a notice of appeal more than thirty (30) days after November 21, 2001 would be untimely and require dismissal of the appeal unless there is an exception because of some other valid rule of law.

Appellant asserts that he filed a Chapter 7 bankruptcy petition on October 30, 2001 and that by virtue of 11 U.S.C. § 362, there is an automatic stay of all proceedings and, thus, he had thirty (30) days after the lifting of the stay on January 30, 2002 within which to file his notice of appeal.

11 U.S.C. § 362 provides, in pertinent part:

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay –

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(2) under subsection (a) of this section –

(A) of the commencement or continuation of an action or proceeding for –

(i) the establishment of paternity; or

(ii) *the establishment or modification of an order for alimony, maintenance, or support; or*

(B) of the collection of alimony, maintenance, or support from property that is not property of the estate.

(emphasis added).

When interpreting a statute, the role of the Court is to "ascertain and give effect to the legislative intent." ***Sharp v. Richardson***, 937 S.W.2d 846, 850 (Tenn. 1996). In the absence of ambiguity, legislative intent is derived from the face of a statute, and the Court may not depart from the "natural and ordinary" meaning of the statute's language. ***Davis v. Reagan***, 951 S.W.2d 766, 768 (Tenn. 1997); ***Westland West Community Assoc. v. Knox County***, 948 S.W.2d 281, 283 (Tenn. 1997).

From the plain language of this statute, we find the stay exemption created by § 362(b)(2)(A)(ii) to be applicable in this case. In the instant matter, Father is appealing the decision of the trial court to grant Mother's petition for establishment and modification of his support obligations. This appeal, in essence, is a continuation of Mother's petition and, therefore, Father's appeal of the trial court's ruling establishing the arrearages and modifying his child support obligations was not stayed. Thus, we hold that Father's notice of appeal was not timely filed. It is quite clear that the time for filing a notice of appeal cannot be extended. Tenn. R. App. P. 2.

Accordingly, the appeal is dismissed, and costs of the appeal are assessed to Appellant, Kenneth Frame, Jr., and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.