# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Brief July 14, 2005

## EDDIE WAYNE GORDON v. STATE OF TENNESSEE

**Direct Appeal from the Claims Commission, Western Division, for the State of Tennessee**
**No. 20-001-210      Nancy C. Miller-Herron, Commissioner**

---

### No. W2005-00048-COA-R3-CV - Filed December 22, 2005

---

An inmate in custody of the Tennessee Department of Correction filed a complaint charging the department with negligently disposing of certain items of personal property. The claim was denied by the Tennessee Claims Commission and the claimant appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed.

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Eddie Gordon, *Pro Se*.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Jennifer L. Brenner, Assistant Attorney General, for the State of Tennessee.

### MEMORANDUM OPINION[1]

The claimant, Eddie Gordon, filed a *Pro se* claim against the State of Tennessee based on Tennessee Code Annotated § 9-8-307(a)(1)(F) for the "negligent care, custody or control of personal property." The claim was transferred to the Tennessee Claims Commission. The matter was decided on affidavits. *See* Tenn. Code Ann. § 9-8-403(2)(h).

By order of December 14, 2004, the commission entered an order of dismissal denying the claim. Mr. Gordon is an inmate in custody of the Tennessee Department of Correction. He states in his affidavit that on September 21, 1999, he was told that he was being moved from Northwest

---

[1]**RULE 10. MEMORANDUM OPINION**
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Correctional Complex Annex (NWCX) to the NWCX main compound. He was instructed that his leather craft material in the leather shop would be packed and sent over the following day. He advised that, in the event that his property was not sent to the main compound, he wanted it to be mailed to his home. He states that he filled out a withdrawal form and gave it to Corporal Reeves so his property could be mailed out. He further states that he advised that under no circumstance did he want his property to be given to charity or destroyed. He further states in his affidavit that he requested a date for his family to come to the institution to pick up his property if it was not going to be mailed to his home.

The affidavit further states that Mr. Gordon was told that he would be able to get into the leather craft shop at the main compound. He states that he was never told that his property would be held until December 31, 1999, and that his property was never transferred but was given away or destroyed. He sought to recover damages for the value of his property which he contends was not forwarded due to negligence on the part of the Defendant.

The record also contains a document entitled "Affidavit of Barbara Collins," although the document is not notarized. Ms. Collins is Mr. Gordon's mother and the document states that Mr. Gordon was making arrangements to either mail out or to have his mother pick up his leather craft items and that she mailed postage stamps to her son to cover the costs of mailing.

The record further contains the affidavit of Corporal Mike Reeves, a correction officer at the Northwest Correctional Complex in Tiptonville, Tennessee. His job responsibilities include managing and supervising the unit where Mr. Gordon is housed. Mr. Gordon was transferred to NWCC on September 21, 1999, and he arrived with leather crafting materials that he was not allowed to keep in his cell. The property was inventoried and placed in the property room. Mr. Gordon was instructed that he would be required to enroll in the NWCC leather crafting program in order to keep the property on site or he would have to send it out. He was instructed that he had thirty days to enroll. He was given over three months, from September 21, 1999 to December 31, 1999, in which to send the property in question off-site and he failed to do so. After three months, the property in question was disposed of according to policy.

Also filed was an affidavit of James Ray, a recreation specialists for the Tennessee Department of Correction ("TDOC") at Northwest Correctional Complex, Site 2 in Tiptonville. Mr. Ray held this position at the time Mr. Gordon participated in the leather shop program. When Mr. Gordon was moved from site 2 to site 1, Mr. Ray packed his leather craft tools and related items and took them to the property room. The remainder of Mr. Ray's affidavit dealt primarily with the value of the items for which Mr. Gordon sought compensation.

The affidavit of Corporal Betty Price states that Mr. Gordon was transferred from NWCX annex to NWCX main compound on September 21, 1999. Among his property which arrived with him were several items which he was not allowed to have in his cell, including leather craft products and materials. She and Corporal Steve Gatlin searched his property and confiscated the items that were not allowed and stored them in the property room. At no time did she tell Mr. Gordon that the

annex would not send the property which he left there. She informed him that if he did not get into the leather program at the main compound within 30 days, he needed to send his property out. He advised her that he was through with it and did not plan on getting back into the program. She tried on several occasions to get Mr. Gordon to send his property out but he did not. He was given over three months to send his property out (from 9/21/99 to 12/31/99). She disposed of his property per policy on 12/31/99.

Mr. Gordon sets forth twelve issues in his brief. However, the essence of his appeal is that the claims commission erred in dismissing his claim for damages and that the commission failed to address his claim that TDOC policies were not followed.

Pursuant to Tennessee Code Annotated § 9-8-403(a)(1) appeals from the claims commission are governed by the Tennessee Rules of Appellate Procedure. Findings of fact by the commission are reviewed *de novo* upon the record with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). In cases where the trier of fact has seen and heard witnesses and observed their manner and demeanor, this Court must give considerable deference to findings with respect to credibility of witnesses and the weight to be given to their testimony. *Walsh v. BA, Inc.*, 37 S.W.3d 911, 918 (Tenn. Ct. App. 2000). However, this Court is as well situated to gauge the weight, worth and significance of depositional testimony as the trier of fact. *Seiber v. Greenbrier Indus., Inc.*, 906 S.W.2d 444, 446 (Tenn. 1995). The commission's conclusions of law are reviewed *de novo* without a presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

The order of dismissal filed by the commissioner includes the following:

It appears to be undisputed that Claimant was transferred to the main site of Northwest Correctional Complex, hereinafter referred to as NWCC, on September 21, 1999. Claimant arrived at NWCC with leather crafting materials which he was not allowed to keep in his cell. Claimant was told he would have to either enroll either in a leather crafting program at NWCC or send the aforementioned materials out of the institution. Inmates normally have thirty (30) days to send such materials out of the institution.

Claimant has been unable to establish that he was enrolled in a leather working class at NWCC.

Claimant avers that he made several attempts to send his leather working material out. He claims first that he signed an institutional form requesting that the postage needed to send out the materials be deducted from his trust account. However, perhaps because these types of documents only are retained for three (3) years, Claimant was not able to produce a copy of the withdrawal form.

Claimant also claims that he had several conversations with Corporal Betty Price, trying to arrange a time when his mother could pick up the leather working materials.

-3-

The State counters that whatever attempts Claimant made to send out his leather working materials, he did not get the job done. As a matter of fact, Corporal Price stated in her affidavit that she "tried on several occasions to get him to send his property out but he did not." The State avers that Claimant was given more than the thirty (30) days inmates are usually given in which to mail out their belongings or have them picked up. In fact, the State claims that Defendant was given from September 21, to December 31, 1999 to dispose of the property. (Footnote omitted.) It should be noted, however, that the personal property storage request form produced by defendant in response to discovery requests indicates that most of the items in question were disposed of on December 10, 1999.

The State also avers that when sending belongings out of the institution, inmates are not allowed to do it by having the costs of postage deducted from their trust account. Instead, they must purchase the stamps from the commissary and give them to employees in the property room. In fact, in *Defendant's Responses to Claimant's Request for Admissions Regarding Counselor Tarver*, Defendant admits that Claimant let Counselor Tarver know he wanted to fill out a withdrawal to have funds deducted from his trust account to mail out his leather crafting materials. Defendant claims, however, that Claimant was told that he would have to purchase stamps from the commissary in order to have the items mailed out.

Claimant produced documents indicating that he was allowed to send packages out by deducting the costs of the postage from his trust account on at least three other occasions. These withdrawals from his trust account were approved on dates both before and after his leather working property was disposed of by Corporal Reeves. Unfortunately, as has already been mentioned, Claimant was not able to produce a withdrawal form for mailing out the leather working materials that are at the heart of his claim.

Although Claimant has filed his own affidavit and that of his mother and has done an impressive amount of discovery in this case, he has not produced documents corroborating his version f events. Claimant has failed to prove by a preponderance of the evidence that Defendant was negligent in disposing of his personal items.

(Footnotes omitted).

Having reviewed the record before us, we have determined that the evidence preponderates in favor of the decision of the commissioner.

The order of dismissal further states as follows:

To the extent that Claimant's cause of action is based upon violation of the policies of the Tennessee Department of Correction, hereinafter referred to as TDOC, that the Tennessee Claims Commission statute contains no provision authorizing suit against the State for failure to comply with and/or negligence in complying with TDOC policies. *See e.g., Reid v. State*, 9 S.W.3d 788, 796 (Tenn. Ct. App. 1999).

-4-

As stated by the Commissioner for the Middle Division in *Haynes, Hunt & Thompson v. State*, Claim Nos. 86356, 85710, 84949 (Tennessee Claims Commission Middle Division, July 3, 1990):

> There is nothing in 9-8-301 *et seq*. which authorizes the Commission to review whether the Department of Corrections abides by its own policies in dealing with inmates. The Claims Commission is not authorized to serve as an "appellate" court to which inmates may turn when they feel the Department of Corrections has violated one of its own policies.

In *Reed v. State*, Mr. Reed was an inmate at NWCC and sought to recover for the loss of a radio. Mr. Reed challenged the change in TDOC policy that no longer allowed radios to be brought into the facility where he was incarcerated. He contended that he had a vested right to have a new radio brought in to replace the one that was lost through TDOC's negligence and that TDOC acted illegally when it changed its policy to retroactively affect his rights. Based upon the supreme court's holding in *Baptist Hospital v. Tennessee Dep't of Health*, 982 S.W.2d 339 (Tenn. 1998), this Court concluded that the claims commission lacked subject matter jurisdiction to rule on the validity or applicability of the TDOC policy challenged by Mr. Reed.

In *Baptist Hospital*, the supreme court granted the appeal to determine whether the claims commission had subject matter jurisdiction over the plaintiff's challenge to certain Medicaid reimbursements paid to them by the state. The hospital case was premised upon the contention that certain regulations of the department of health were invalid because they violated federal law. The court held that "[c]laims challenging the validity of or applicability of a statute, rule, or order must be brought pursuant to the UAPA." *Id*. at 341. Accordingly, the court held that the hospital's challenge to validity of the rule should have been brought before the department of health pursuant to the UAPA.

In the present case, Mr. Gordon, as we understand his argument, is not challenging the validity of TDOC policies, but rather that the department failed to follow its own policies. Tennessee Code Annotated § 9-8-305(5)(A) provides that each commissioner has the authority to take notice of state statutes and the rules and regulations of state agencies. In reviewing this record, we do not find that the TDOC failed to follow its regulations in disposing of Mr. Gordon's property after passage of the required time.

The judgment of the claims commission is affirmed and the costs of this appeal are taxed to the Appellant, Eddie Gordon.

 

 

_____
DAVID R. FARMER, JUDGE