IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 7, 2003 Session

## JERRY BRANDON LAY v. SCOTT COUNTY SHERIFF'S DEPARTMENT and THE LOCAL GOVERNMENT WORKERS' COMPENSATION FUND

Appeal from the Chancery Court for Scott County
No. 8703     Billy Joe White, Chancellor

---

### No. E2002-01731-SC-R3-CV - Filed June 19, 2003

---

The primary issue in this workers' compensation appeal is whether the attainment of maximum medical improvement is a necessary factor in determining whether there has been a meaningful return to work under Tennessee Code Annotated section 50-6-241.  The trial court found that since the pre-injury employer returned the employee to work at a lower wage than his pre-injury wage, Section 50-6-241(a)(1) did not apply, and the trial court set the employee's permanent partial disability award based on 60% to the body as a whole, approximately 4.6 times the employee's 13% impairment rating. We reverse the trial court and find that where an employee has had a meaningful return to work for five months, resigns for reasons unrelated to his injury, and then returns to the same employer a year later at a lower wage, the employee may not take advantage of this statute by arguing that he has not had a meaningful return to work. Thus, Section 50-6-241(a)(1) applies to limit the employee's recovery to two and one-half times his impairment rating, and the employee's award is modified to 32.5% permanent partial disability to the body as a whole.

**Tenn. Code Ann. § 50-6-225(e)(3); Judgment of the Trial Court Reversed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR.,  JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William A. Lockett and Michael A. Kent, Chattanooga, Tennessee, for the appellant, Scott County Sheriff's Department and The Local Government Workers' Compensation Fund.

W. Holt Smith, Madisonville, Tennessee, and Howard R. Ellis, Oneida, Tennessee, for the appellee, Jerry Brandon Lay.

### OPINION

### Factual and Procedural Background

The plaintiff, Jerry Brandon Lay ("Lay"), worked as a deputy sheriff for the defendant, the Scott County Sheriff's Department, when he was injured in an automobile accident while responding

to a call on October 21, 2000. Lay's neck, left shoulder, arm, and back were injured. At first, his neck caused him the most pain, but it "loosened up" after undergoing physical therapy. Lay's back pain continued to worsen, however, and symptoms moved to his hip and leg. Eventually the pain extended to his foot, with numbness and shooting pain down his left leg.

Initially, Lay was treated for his neck and back injuries by Dr. Coffey, a general practitioner in Scott County. Dr. Coffey ordered an MRI of Lay's lower back and sent Lay to Dr. Finelli, a Knoxville neurosurgeon. Dr. Finelli saw Lay on August 14, 2001, almost ten months after Lay's accident. Lay complained of two problems resulting from the accident: back pain and shooting pain down his left leg. Dr. Finelli believed that Lay had a pinched nerve and ordered a myleogram and a CT scan to confirm his belief.

Dr. Finelli again saw Lay on August 28, 2001, and concluded that Lay had a bulging disc with some nerve impingement at the L4-5 disc area. Dr. Finelli discussed surgery and explained that it would alleviate Lay's leg pain, but that it would not help his back pain. Lay opted for conservative treatment rather than surgery. By October, however, Lay had not improved, and Dr. Finelli performed surgery on Lay's back on November 5, 2001.

Dr. Finelli removed a large bulging disc at L4-5 that was compressing the nerve root. After the successful surgery, Lay's leg pain subsided, but he continued to have back pain. Dr. Finelli saw Lay again on December 27, 2001, after a Functional Capacity Evaluation ("FCE") had been performed. The FCE indicated that Lay could perform medium-type work, including the work of a deputy sheriff. Dr. Finelli rated Lay's disability at 13% to the body as a whole and placed Lay on restrictions to return to work at a medium level. Lay reached maximum medical improvement on January 2, 2002, and Lay has not returned to Dr. Finelli since that date.

The crux of this case involves Lay's employment pattern following the accident. As mentioned above, Lay was employed by the Scott County Sheriff's Department at the time of the accident. Lay continued to work for the Sheriff's Department for five months after the accident, in the same position and at the same pay as prior to the accident. In March 2001, Lay voluntarily resigned his position for a better paying job at a building supply store, Salvage, LLC ("Salvage"). Lay was working as a manager for Salvage when he had surgery in November 2001, and Lay planned to return to Salvage following his recovery. Due to Dr. Finelli's restrictions on Lay's work, however, Salvage refused to take Lay back.

Lay then applied for other employment and was rehired in April 2002 by the Sheriff's Department as a deputy, the same position he left in March 2001. His rate of pay was lowered, however, apparently to the bottom of the pay scale. Lay has continued to perform his duties as a deputy sheriff since returning.

Lay filed a workers' compensation complaint on June 18, 2001, in Scott County Chancery Court. At trial, Lay was 28 years old; he testified that he has an 11th grade education and later obtained his GED. Furthermore, Lay has had extensive training and certifications in law

enforcement and law enforcement training. His physical disabilities are limited: he is restricted to "medium level" work, which includes the duties of a law enforcement officer. He has not taken prescription pain medication, nor has he been back to see Dr. Finelli, since his release on January 2, 2002. Lay also testified that his injury affects his lifting, playing with his children, and walking on uneven ground. The trial court found that the two and one-half (2 ½) times multiplier found in Tennessee Code Annotated section 50-6-241(a)(1) did not apply because the employer had not returned Lay to the same position at the same wage. Thus, the chancellor awarded Lay disability benefits based on 60% disability to the body as a whole, approximately 4.6 times Lay's 13% impairment rating.

The Scott County Sheriff's Department appealed to the Supreme Court Workers' Compensation Appeals Panel, asserting that the trial court erred by not applying the statutory cap set forth in Tennessee Code Annotated section 50-6-214(a) and, in the alternative, that the trial court's award of permanent disability benefits of 60% to the body as a whole was excessive. After the Panel heard arguments on February 7, 2003, the case was transferred to the entire Supreme Court for review.

## Standard of Review

In workers' compensation cases, the standard of review is de novo upon the record, accompanied by a presumption of the correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2); Mannery v. Wal-Mart Distriution Ctr., 69 S.W.3d 193, 196 (Tenn. 2002).

## Analysis

Tennessee Code Annotated sections 50-6-241(a)(1) and (b) of the Tennessee Workers' Compensation Law apply when an injured employee is entitled to receive permanent partial disability benefits, and they provide the amounts of permanent disability benefits that can be awarded to eligible injured employees. Tennessee Code Annotated sections 50-6-241(a)(1) and (b) provide as follows:

> For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, pursuant to § 50-6-207(3)(A)(i) and (F), and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (2 ½) times the medical impairment rating . . ..

Tenn. Code Ann. § 50-6-241(a)(1).

> Subject to factors provided in subsection (a) of this section, in cases for injuries on or after August 1, 1992, where an injured employee is eligible to receive permanent

partial disability benefits, pursuant to § 50-6-207(3)(A)(i) and (F), and the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating . . . .

Tenn. Code Ann. § 50-6-241(b).

The County argues that the 2 ½ statutory cap of Section 50-6-241(a)(1) applies in this case because the Sheriff's Department returned Lay to the same position at the same wage following his accident. Relying upon Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625 (Tenn. 1999), in which this Court held that Subsection 241(a)(1) applies in cases where there has been a "meaningful return to work,"[1] the County maintains that Lay's first return to work following the accident was "meaningful" under Nelson. The County thereby urges us to ignore Lay's second, post-surgery return to work. Lay, on the other hand, argues that this Court should only consider his second return to work, after he attained maximum medical improvement.

The critical issue before us, then, is at what point does Section 50-6-241 apply? Or, more concisely, is the attainment of maximum medical improvement a necessary factor in determining whether there has been a meaningful return to work?

We first address Lay's argument that the determination of whether there was a meaningful return to work must occur only after an employee reaches maximum medical improvement. Lay cites two cases to support his position. In the first, Smith v. U.S. Pipe & Foundry Co., 14 S.W.3d 739, 744-45 (Tenn. 2000), this Court held that "permanent disability benefits, whether total or partial, begin accruing on the date that the employee attains maximum medical improvement." In Smith, we were not interpreting and applying the statutory caps set out in Section 50-6-241, and Smith does not require a court to ignore the employee's work activities prior to the date of attaining maximum medical improvement when applying these caps. Instead, in determining whether there has been a meaningful return to work, the focus is upon "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work,"[2] not the date on which maximum medical improvement was attained.

Lay next argues that the Workers' Compensation Appeals Panel decision in Haywood v. Ormet Alumnium Mill Products Corp., No. W2001-01494-WC-R3-CV, 2002 WL 927440 (Tenn. Workers' Comp. Panel May 1, 2002) is directly on point. In Haywood, the employee was laid off two months after reaching maximum medical improvement, and the Panel determined that the employee did not have a meaningful return to work as a result. This case is factually distinguishable

---

[1] See Nelson, 8 S.W.3d at 629 (citing Newton v. Scott Health Care Ctr., 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel 1995)).

[2] Newton, 914 S.W.2d at 886.

-4-

because Lay voluntarily resigned to accept a better job offer, while the employee in <u>Haywood</u> lost his job through no fault of his own.

The County cites two cases to support its argument that Lay had a meaningful return to work and that the 2 ½ statutory cap should apply. The first is <u>Key v. American Insurance Co.</u>, M20001-00980-WC-R3-CV, 2002 WL 1063940 (Tenn. Workers' Comp. Panel May 29, 2002), where the Panel held that the 2 ½ times cap applied since the employee voluntarily resigned. <u>Key</u> is not controlling here because it was undisputed that the employee in <u>Key</u> had made a meaningful return to work. The employee had worked for a period of nine months after her treating physician released her with no restrictions.

A more analogous situation is presented by the second case on which the County relies, <u>Davis v. Avron Truss Co.</u>, E2000-00780-WC-R3-CV, 2001 WL 767014 (Tenn. Workers' Comp. Panel July 5, 2001). There, the employee returned to work with restrictions but was fired for fist-fighting before reaching maximum medical improvement. The Panel applied the 2 ½ statutory cap, stating: "the plaintiff was afforded a reasonable return to work; therefore, he may recover only two and one-half times his medical impairment rating . . .." <u>Avron Truss</u>, 2001 WL 766014, at *3.

Similarly, we recently held in <u>Hardin v. Royal & Sunalliance Insurance</u>, _____ S.W.3d _____, _____ (Tenn. 2003), that

> [W]hile a trial court may reconsider a previous award if the employee resigned, it may increase the award only if the resignation was reasonably related to the injury. For example, the resignation may be due to the employee's inability to perform the work or the employer's refusal to accommodate the worker's medical restrictions. As we stated in <u>Newton</u>, the resolution of what is reasonable must rest upon the facts of each case and be determined thereby.

At oral argument, Lay argued that this rule should not be applied to his case because <u>Hardin</u> involved a reconsideration of an award, rather than an initial assessment. <u>Hardin</u>, however, holds that to increase an award on reconsideration, the employee must show a relationship between the injury and the termination of employment. There is no reason that the same standard should not be used in an initial assessment, to determine whether there was a meaningful return to work and if the 2 ½ cap in Subsection 241(a)(1) applies. In fact, <u>Hardin</u> was based in part upon <u>Newton</u>, which involved an initial award.

Clearly, if an employee returns to work but is unable to perform his or her duties due to a work-related injury, then the worker's resignation would be reasonably related to the injury, and there would be no meaningful return to work. That is not the case here. Lay returned to work following the accident and left to take a higher-paying job with Salvage. As contemplated by <u>Newton</u>'s reasonableness test for meaningful return to work, Lay's resignation was "unreasonable" behavior, as it was not related to his injury.

Finding that a court, when assessing meaningful return to work, is limited to only those events occurring after an employee attains maximum medical improvement, regardless of the employee's own actions, would be contrary to the holdings of other cases and to the purpose of Section 50-6-241.

In Avron Truss, the Panel found that "[t]he fact that the employee [who was fired for fighting at work] had not reached maximum medical improvement is of no import when willful misconduct of this type is involved." Avron Truss, 2001 WL 766014, at *2. Furthermore, this Court held in Carter v. First Source Furniture Group, 92 S.W.3d 367 (Tenn. 2002), that because the employee was fired for chasing a fellow employee with a box cutter prior to attaining maximum medical improvement, the employer was not required to return the employee to work to receive the benefit of the lower 2 ½ statutory cap in Subsection 241(a)(1). Avron Truss and Carter differ in that the Avron Truss Panel found the employee was afforded a "reasonable return to work," while in Carter we did not address the issue because the employer was not required to rehire the employee; however the principle behind both cases is the same: an employee's misconduct prior to attaining maximum medical improvement cannot be used to augment the employee's award.

While Lay's situation is different from those in Avron Truss and Carter in that his termination was the result of a voluntary resignation rather than misconduct, the same principle applies: an employee cannot avoid the statutory caps and thereby augment his award through his unilateral acts when those acts are unrelated to the injury. In Davis v. Reagan, 951 S.W.2d 766 (Tenn. 1997), we recognized that Section 50-6-241 is intended to "'encourage employers to retain injured workers at wages equal to or greater than [the wages] received prior to the injury by providing for lesser disability awards if the employee is retained.'" Reagan, 951 S.W.2d at 768 (quoting Seiber v. Greenbrier Indus., 906 S.W.2d 444, 447-48 (Tenn. Workers' Comp. Panel 1995)). Once the employee has severed his relationship with his employer, the purpose of the statute is frustrated — the relationship the statute sought to maintain no longer exists. Where, as here, an employee chooses to sever the employment relationship to accept a better job offer, the employee may not later take advantage of this statute. So long as a return to work is offered, as it was here, an employee who resigns for reasons unrelated to his injury may not escape the statutory caps.

Lay was fully able to perform the duties of his employment with the Sheriff's Department. After his October 2000 accident, he continued to work for the Sheriff's Department in the same position and at the same wage for five months. Lay, like the employee in Avron Truss, was afforded a return to work as required by Section 50-6-241(a)(1); the fact that he was no longer working for the Sheriff's Department at the time of his attaining maximum medical improvement on January 2, 2002, is the result of Lay's own unilateral action of accepting other employment for more money.

We decline to adopt Lay's argument that whether a "meaningful return to work" occurred must be determined after the employee reaches maximum medical improvement. Therefore, we find that the trial court erred by not applying the 2 ½ times cap set forth in Section 50-6-241(a)(1). Thus, based on Lay's employability and continued pain, we award Lay permanent partial disability benefits

-6-

based on 32.5% disability to the body as a whole, or two and one-half times his 13% impairment rating.

## Conclusion

For the reasons stated herein, the judgment of the trial court is reversed. The plaintiff is awarded 32.5% permanent partial disability to the body as a whole, and this case is remanded to the trial court for any further proceedings. Costs of this appeal are taxed to the plaintiff, Jerry Brandon Lay, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE