

FILED

January 22, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:15 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Barry Anderson**

**EMPLOYER: Hallmark Mgt., Inc.**

**INSURANCE CARRIER: Bridgefield Cas. Ins. Co.**

**DOCKET #: 2014-07-0020**
**STATE FILE #: 62789-2014**
**DATE OF INJURY: August 12, 2014**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Barry Anderson, (Mr. Anderson) the Employee, on December 23, 2014, with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239, to determine if temporary disability benefits should be initiated.

The Court conducted an in-person evidentiary hearing on January 14, 2015. Mr. Anderson participated *pro se*. Hallmark Management, Inc. (Hallmark) participated through their Counsel, Ryan Sarr, and representative, Ms. Glynnis Patton. Employee testified on his own behalf. Ms. Patton testified on behalf of Hallmark.

Considering the positions of the parties, the applicable law, and the evidence submitted, the Court hereby finds that Mr. Anderson is not entitled to the requested temporary disability benefits.

### ANALYSIS

#### Issue

Whether Employee is entitled to temporary disability benefits.

#### Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination
- Dispute Certification Notice

1

- Request for Expedited Hearing
- Employer's Witness and Exhibit List

The following documents were admitted into evidence:

Exhibit 1: Wage Statement (by stipulation of the parties)

Exhibit 2: Medical Records of Camden Medical Center, Sports Orthopedics and Spine and Skyline Medical Center (by stipulation of the parties)

Exhibit 3: Employee's Resignation Letter (by Employer)

Exhibit 4: Earnings History of Employee (by Employer)

## History of Claim

Barry Anderson was employed by Hallmark, a property management company, as a maintenance person. Hallmark paid Mr. Anderson regular wages and provided him an apartment at his assigned work location, Sunrise Village Apartments, in Camden, Tennessee. On August 4, 2014, Mr. Anderson submitted a resignation letter to Hallmark advising that he would be "leaving the maintenance position at Sunrise Village on September 15, 2014." Ex. 3. At the hearing, Mr. Anderson testified that he left Hallmark to accept another job at DuPont. (Recorded Transcript at 10:48).

On August 12, 2104, Mr. Anderson fell while working and injured his back. Hallmark accepted his workers' compensation claim and provided medical care.

On September 3, 2014, Mr. Anderson saw Dr. Timothy Sweo. Mr. Anderson reported the fall to Dr. Sweo and complained of back and neck pain. The back pain "runs down his leg and his foot goes numb." He told Dr. Sweo that he had not worked since his injury. Ex. 2 at 16. Following the history and examination, Dr. Sweo diagnosed cervical neuralgia and low back pain. Id. at 17. He referred Mr. Anderson for physical therapy and imposed restrictions of no lifting over 25 lbs. and no bending. Id. at 20. On October 1, 2014, Dr. Sweo diagnosed "probable cervical radiculopathy" and advised there was "no change in work restrictions."

After his injury, Mr. Anderson advised Hallmark, through "Marilyn," that he had an employment offer at DuPont but, due to his back injury, he did not believe he could accept the offer.(Recorded transcript at 10:58) He expressed a desire to retain his position at Hallmark. Hallmark refused to retain Mr. Anderson and he ceased working for the company on September 15, 2014. Hallmark paid Mr. Anderson his regular wages for the entire time between the injury and September 15. Ex. 4. Mr. Anderson also was compelled to move out of the apartment provided him by Hallmark. At the hearing, Mr. Anderson testified that he was unemployed and had to stay with family members. He was still undergoing medical care. He stated at the hearing that Marilyn had advised him that Hallmark had no light duty. (Recorded transcript at 22:50)

2

Ms. Glynnis Patton, the property manager, testified on behalf of Hallmark. Ms. Patton testified that she was not aware that Mr. Anderson had been placed on light duty as of September 3, 2014 (20:39) but testified that Hallmark could have accommodated his restrictions when she was shown the actual restriction form of Dr. Sweo. (21:12). She also confirmed that Hallmark hired a replacement for Mr. Anderson on or before September 15, 2014. (21:30). She identified payroll records indicating that Hallmark paid Mr. Anderson his regular wages through September 15, 2014. (19:36). In response to Mr. Anderson's question regarding an e-mail communication Mr. Anderson received from Marilyn regarding "changing his mind" and desiring to remain employed, Ms. Patton responded she was not aware of such communication. (24:45).

## Employee's Contentions

Mr. Anderson argues that he should receive temporary benefits because he has not been able to work since his injury and has ongoing disability. He admits that he voluntarily resigned from Hallmark but argues that he "changed his mind" and desired to remain with Hallmark. Instead of allowing him to remain employed, Hallmark told him that he needed to vacate his apartment. He testified[1] that Marilyn, a representative of Hallmark, advised him that there was no light duty available.

## Employer's Contentions

Hallmark argues that Mr. Anderson voluntarily resigned his job and that it had light duty available to him. Therefore, he cannot receive temporary benefits because, but for the voluntary resignation, he would have been able to continue working for Hallmark at all relevant times.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee bears the burden of proving each and every element of the claim by a preponderance of the evidence.

### Factual Findings

Barry Anderson sustained a back injury arising primarily out of and in the course of his

---

1 As a pro se litigant, Mr. Anderson added comments at inappropriate times. For example, when the Court references he "testified" as to Marilyn advising him that Hallmark had no light duty, Mr. Anderson made the statement when he was given the opportunity to cross-examine Ms. Patton, Nevertheless, in fairness to Mr. Anderson, the Court notes his evidence that he was told at some point that no light duty was available. Given the preponderance of the evidence and the findings hereafter, admission of this "testimony," is not dispositive to the outcome.

employment with Hallmark on August 11, 2014. Hallmark accepted the claim and provided medical care to Mr. Anderson. He came under the care of Dr. Timothy Sweo, the authorized treating physician, who, on September 3, 2014, placed restrictions of no lifting over twenty-five pounds (25 lbs.) and no bending.

Prior to the date of injury, Mr. Anderson submitted a letter of resignation to Hallmark dated August 3, 2014. Mr. Anderson planned to leave Hallmark to take another job. After he sustained his work-related injury, Mr. Anderson wanted to revoke his resignation. Hallmark paid Mr. Anderson regular wages through September 15, 2014, the last day he worked for Hallmark. Hallmark had light duty work available at the time of Mr. Anderson's last day worked and thereafter.

*Application of Law to Facts*

Mr. Anderson seeks temporary benefits for the period he last worked for Hallmark, from September 15, 2014, through the date of hearing and ongoing. He testified that he has not worked since leaving Hallmark and remains under restrictions from Dr. Sweo. Because he believes Hallmark either did not have or did not offer him light duty work, he "cannot understand" why he is not entitled to benefits.

Though Mr. Anderson's frustration, compounded by several months without income, is understandable, Tennessee law does not support his claim for temporary benefits and his claim must be denied.

Tennessee law provides two types of temporary benefits: temporary total disability (TTD) and temporary partial disability (TPD). "Under Tennessee law, to establish entitlement to temporary total benefits, an employee must show that he was (1) *totally disabled* to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 2000)(emphasis added). In this case, Mr. Anderson cannot recover temporary *total* disability benefits as he is able to work with restrictions.

Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached his maximum recovery. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032 (Tenn. Workers' Comp. Panel 2005). Tennessee Code Annotated section 50-6-207(2) states:

> In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition.

Here, if Mr. Anderson were entitled to any temporary benefits, those would be temporary partial benefits. He was able, per Dr. Sweo, to work within restrictions but had not yet reached maximum medical improvement. The amount of TPD would be two-thirds (2/3) of the difference between his average weekly and zero since he could not have earned any wages from Hallmark

4

without the provision of light duty. However, the inquiry need not reach any TPD calculation. Mr. Anderson had resigned *before* he sustained the injury in question. As such, the Court finds he would not be entitled to TPD benefits.

The Court has not found any authority addressing whether an employee can recover TPD when he sustains an injury during his notice period after a voluntary resignation. However, our courts have addressed the issue of claimed TPD when an employee voluntarily resigns. In *Kelley v. D&S Residential Holdings*, E2001-02392-WC-R3-WC, 2012 Tenn. LEXIS 632 (Tenn. Workers' Comp. Panel, August 3, 2012) the court denied an award of TPD. In *Kelley*, the employee never complained that non-injury related reasons were the basis for her not returning to work. Moreover, it was not her medical restrictions which prevented a work return: "Instead, the testimony establish[ed] that the employee was fully capable of performing the same job for the same wage within each of her physical restrictions at all relevant times, yet she made no attempt to return." *Id.* at 23.

Unlike the claimant in *Kelley*, Mr. Anderson did not refuse a return to work. To the contrary, he testified that he was willing to return to work. However, like the *Kelley* employee, Mr. Anderson also left his job with Hallmark voluntarily and for reasons other than his inability to perform his job due to injury.

In *Phillips v. Deroyal Industries*, E2001-01655-WC-R3-CV, 2002 Tenn. LEXIS 324 (Tenn. Workers' Comp. Panel, July 8, 2002), the employee quit one day after attempting to return to work. The *Phillips* employee decided his pain was too great to continue working despite his being provided a job within his restrictions. *Id. at* 5. The employee walked away from his job, never reported to the employer and was terminated. *Id.* TPD was denied, again due to a subjective action on the part of the employee, rather than a physical inability to work. Although Mr. Anderson certainly conveys more motivation to work than the *Phillips* employee, his resignation was equally unrelated to any injury.

Beyond the realm of TPD, in "return to work" cases assessing whether the multiplier caps applied under prior statutory provisions, our courts focused upon the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work. *See, e.g., Newton v. Scott Health Care Centers*, 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel 1995). In one of those cases, *Lay v. Scott Co. Sheriff's Department.*, 109 S.W.3d 293 (Tenn. 2003), the employee voluntarily resigned his pre-injury job to take another. He attempted to argue, since he was no longer employed by the pre-injury employer, that he was not subject to the lower multiplier cap. Our Supreme Court disagreed, and stated the following:

> Clearly, if an employee returns to work but is unable to perform his or her duties due to a work-related injury, then the worker's resignation would be reasonably related to the injury, and there would be no meaningful return to work. That is not the case here. [Employee] returned to work following the accident and left to take a higher-paying job with [another employer]. As contemplated by *Newton's* reasonableness test for meaningful return to work, [Employee's] resignation was "unreasonable" behavior, as it was not related to his injury.

*Id. at* 298.

5

In this case, Mr. Anderson opted to resign from Hallmark on August 3, 2014, to accept another job. There is nothing per se "unreasonable" about his resignation; but for purposes of the workers' compensation law, he acted unilaterally. There is nothing in Tennessee law requiring Hallmark to accept Mr. Anderson's revocation of his resignation. As an employee-at-will, Mr. Anderson could be retained or terminated at the will of Hallmark at any time. His replacement had been hired at the time of his last day worked. Tennessee law does not require Hallmark to retain Mr. Anderson or risk paying TPD. *Cf. Carter v. First Source Furniture Group*, 92 S.W.3d 367 (Tenn. 2002)(an employer should not be penalized by having to pay increased benefits under the Workers' Compensation Law by enforcing its workplace policies). In short, Hallmark is not required to return Mr. Anderson to work, post-acceptance of his resignation, merely because he suffered a workplace injury.

Mr. Anderson was injured on August 12, 2014, nine days after he had submitted his resignation letter on August 3. Notably, he continued to work for Hallmark from the date of injury until September 15, 2014. Mr. Anderson testified that Hallmark paid him workers' compensation benefits following his injury. Hallmark, however, presented evidence that it paid Mr. Anderson regular wages through September 15, 2014. Ex. 4. This fact is particularly important because, as of September 3, Mr. Anderson was working for Hallmark while under restrictions from Dr. Sweo. The proof shows by a preponderance of the evidence that Mr. Anderson was able to, and in fact did, continue working at Hallmark for two (2) weeks within the restrictions at issue. Though Ms. Patton testified at the hearing that she was not aware of the light duty restrictions (Recorded Transcript, 20:39), the facts confirm Mr. Anderson's ability to work and the proof is uncontroverted that Hallmark had light duty available for Mr. Anderson as of not only September 15, 2014, but also thereafter. Thus, even if Mr. Anderson had not voluntarily resigned, he would not be entitled to TPD benefits for the requested time frame. Accordingly, the Court holds that Mr. Anderson is not entitled to temporary benefits.

This ruling is interlocutory in character and addresses only his entitlement to benefits during the requested timeframe. Nothing prevents Mr. Anderson from later asserting a claim for either type of temporary benefits upon a showing of entitlement to same.

**IT IS, THEREFORE, ORDERED** as follows:

1. Employee's interlocutory request for temporary disability benefits is denied at this time. This is not a Final Order.

2. This matter is set for Initial Hearing on March 18, 2015 at 2:00 p.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary**

6

**confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 22nd day of January, 2015.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free at to participate in your scheduled conference.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the

7

parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| Barry Anderson | | | | | | Barryanderson16@yahoo.com |
| Ryan Sarr | | | | | | rsarr@morganakins.com |
| Richard Clark | | | | | | rclark@morganakins.com |

Allen Phillips, Judge
Court of Workers' Compensation Claims

8



**Filed Date Stamp Here**

## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
220 French Landing Drive, 1st Floor
Nashville, TN 37243-1002
Facsimile: 615-253-2480

www.tn.gov/labor-wfd/wcomp.shtml
Email: wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____ / _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at  Select Office Location

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

### Additional Information

**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits

☐  Medical benefits for current injury

☐  Medical benefits under prior order issued by the Court

**Judge** Select Here

### List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

LB-1099  (Rev. 10-14)                     Page  1  of  2                     RDA 10183

**Appellee(s)**

**Appellee (Opposing Party):**_____  At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

**CERTIFICATE OF SERVICE**

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant]       _____