IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2021 Session

**JOHN DOE v. JANE ROE**

**Appeal from the Circuit Court for Davidson County**
**No. 20C795  Thomas W. Brothers, Judge**

___

**No. M2020-01277-COA-R3-CV**

___

This appeal involves review of a trial court's denial of the defendant's motion to dismiss plaintiff's lawsuit pursuant to the Tennessee Public Participation Act. The trial court determined that the Tennessee Public Participation Act was not applicable and denied the motion, finding that the defendant's activity was not protected. The defendant now appeals, contending that the underlying matter involves the exercise of her right to free speech and her right to petition. We agree and find that the defendant engaged in protected activity in the filing of a Title IX complaint. Because we find that the defendant's appeal is limited to that part of the trial court's judgment relating to the allegations in plaintiff's lawsuit concerning defendant's Title IX complaint, we reverse in part the trial court's cited basis for denial and remand for further proceedings consistent with this Opinion and the Tennessee Public Participation Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY ARMSTRONG, JJ., joined.

John J. Griffin, Jr., Michael A. Johnson, and Kelley Strange, Nashville, Tennessee, and David T. Hooper, Brentwood, Tennessee, for the appellant, Jane Roe.

Michelle Owens, Nashville, Tennessee, for the appellee, John Doe.

David L. Hudson, Jr., Nashville, Tennessee, for *amicus curiae*, First Amendment Scholar.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

The facts giving rise to this appeal are largely in dispute and are a matter of great contention between the parties. The plaintiff and defendant, identified as John Doe and Jane Roe respectively in this litigation, were acquaintances prior to the events giving rise to this appeal. At the time of the alleged incident, both parties were students at Middle Tennessee State University ("MTSU") in Murfreesboro, Tennessee. On November 30, 2018, Roe met up with Doe. Roe alleges that Doe sexually assaulted her later that night, which Doe disputes. At varying times after the incident, Roe informed friends and family of the assault, including a professor at MTSU. On December 5, 2019, Roe filed a complaint with MTSU's Title IX office. The Title IX office later completed its investigation, finding that there was a lack of evidence to proceed further, specifically noting that "the proof does not show that it was more likely than not" that a Title IX violation occurred.

Doe ultimately filed a complaint in the Davidson County Circuit Court ("the trial court") against Roe for defamation, false light invasion of privacy, and intentional infliction of emotional distress. Specifically, Doe based his claims on Roe's Title IX complaint as well as her purported communications regarding the incident with friends and family and on social media. In response to Doe's complaint, Roe filed a motion to dismiss, arguing that her activity was protected under the Tennessee Public Participation Act ("TPPA"), codified at Tennessee Code Annotated section 20-17-101 *et seq.*[1] Roe's motion was specifically filed pursuant to the authority in Tennessee Code Annotated section 20-17-104(a), which provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a). Following a hearing, the trial court denied Roe's motion, finding that the matter was not one of public concern such as to warrant the application of the TPPA. Roe thereafter filed this interlocutory appeal as permitted by the statute.[2]

## ISSUE PRESENTED

Roe raises a single issue[3] for our review on appeal:

---

[1] Roe also filed a separate motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6). However, that motion is not before this Court.

[2] Tennessee Code Annotated section 20-17-106 provides:

> The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals. The Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals.

[3] At the outset, we note that, for the purposes of this Opinion, we concern ourselves only with the portion of Doe's lawsuit that concerns Roe's complaint filed with MTSU's Title IX Office. At oral argument, Roe's counsel indicated that she was proceeding on all facets of Doe's complaint, which includes Roe's purported statements to friends and family, as well as those allegedly on social media, regarding the sexual assault allegations. However, upon a close examination of Roe's brief, we find no articulated issue or argument regarding those contentions that provide any indication that Roe is appealing those matters as well. In support of this, we point to Roe's own statement of the issue on appeal, in which she states the

- 2 -

1. Whether the trial court erred in holding that the Tennessee Public Participation Act, Tenn. Code Ann. § 20-17-101, *et seq.*, does not apply to the report of an alleged crime to a government entity.

## STANDARD OF REVIEW

At the outset, we note that the TPPA is a relatively new creature of the legislature, having only been codified in 2019. In fact, the first Tennessee appellate opinion providing guidance on interpretation of the TPPA was only recently decided. *See Nandigam Neurology, PLC, v. Beavers*, No. M2020-00553-R3-CV, 2021 WL 2494935 (Tenn. Ct. App. June 18, 2021).

Statutory construction is a question of law which we review *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Spears v. Weatherall*, 385 S.W.3d 547, 549 (Tenn. Ct. App. 2012). As we are interpreting a statute, the rules of statutory construction shall apply. Our goal in statutory construction is to "carry out legislative intent without broadening or restricting the statute beyond its intended scope." *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). As such, we presume that every word contained in a statute has both meaning and purpose and should therefore be given its full effect if the General Assembly's obvious intention is not violated in doing so. *Id.* at 613–14 (citing *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)). Thus, when the language of a statute is unambiguous, we apply its plain meaning. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004) (citing *Carson Creek Vacation Resorts v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)). Essentially, "[o]ur obligation is simply to enforce the written language." *In re Estate of Tanner*, 295 S.W.3d at 614 (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)).

---

issue as, "[w]hether the trial court erred in holding that the Tennessee Public Participation Act, Tenn. Code Ann. § 20-17-101, et seq., does not apply to the report of an alleged crime to a government entity." Moreover, we also point to the language contained elsewhere in Roe's brief, wherein she states, "[t]he *communication* at issue plainly involves a matter of public concern under the TPPA. [Doe] alleges [Roe] is guilty of defamation based on her accusation of rape made in a Title IX complaint." (emphases added) We note that the only portion of Roe's brief in which she even mentions these other communications is in her discussion on Doe's alleged inability to prove each element of his causes of action. The passing argument developed as to these other communications, therefore, is not in any way directed at *Roe's* burden under the statute, which requires her to demonstrate that the legal action was in response to her protected activity. Again, the only issue Roe raises as to her alleged protected activity is in relation to her Title IX complaint, a point her "Statement of the Issue" makes unmistakably clear. Although Roe may have attempted to broaden the scope of our inquiry at oral argument, it is well settled that oral argument is not a permissible way to extend review to issues not raised in briefing. *See Christie v. Christie*, No. M2012-02622-COA-R3-CV, 2014 WL 4293966, at *6 (Tenn. Ct. App. Apr. 25, 2014) ("Issues initially raised at oral argument are not properly presented for review in accordance with this court's rules."). Accordingly, for the purposes of this Opinion, we will only address the TPPA's applicability as it concerns Roe's Title IX complaint.

- 3 -

**DISCUSSION**

*Anti-SLAPP Statutes and The Tennessee Public Participation Act*

The underlying matter involves the application of Tennessee's Anti-SLAPP law, the TPPA, to a lawsuit filed by Doe against Roe for defamation, false light invasion of privacy, and intentional infliction of emotional distress. SLAPP[4] suits are lawsuits used "as a powerful instrument of coercion or retaliation" against a defendant, George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation" ("SLAPPS"): An Introduction for Bench, Bar and Bystanders*, 12 BRIDGEPORT L. REV. 937, 942 (1992) (quoting *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 740–41 (1983)), and anti-SLAPP legislation such as the TPPA is designed to counteract such lawsuits and prevent "meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources." John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, 26 LOY. L.A. L. REV 395, 396 (1993).

Enacted in 2019, the TPPA is designed to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. As with the typical design of anti-SLAPP statutes, the TPPA works to "discourage[] and sanction[] frivolous lawsuits and permits the early disposition of those cases before parties are forced to incur substantial litigation expenses." Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019). Although it has been noted that Tennessee had a limited anti-SLAPP statute before the TPPA, the TPPA "broadens anti-SLAPP protection." *Id.*

The TPPA provides relief for parties who partake in protected activity constituting either the exercise of the right of association, the exercise of the right of free speech, or the exercise of the right to petition. Tenn. Code Ann. §§ 20-17-104(a), 20-17-105. Specifically, if the petitioning party makes a prima facie case that they have participated in protected activity under the TPPA, the court may then dismiss the action against them, "unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a)(b). The TPPA also provides definitions as to what constitutes these forms of protected activity. For example, an "'exercise of the right of association'" is an "exercise of the constitutional right to join together to take collective action on a matter of public concern that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(2). An "exercise of the right of free speech" means "a communication

---

[4] "SLAPP" serves as an acronym for "strategic lawsuit against public participation." Todd Hambridge et al., Speak Up., 55 Tenn. B.J. 14, 15 (2019).

- 4 -

made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). Finally, an "exercise of the right to petition" means "a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and: (A) Is intended to encourage consideration or review of any issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body[.]" Tenn. Code Ann. § 20-17-103(4).

Notably, the definitions above reveal that both the "exercise of the right of association" and the "exercise of the right of free speech" require that the activity be connected with a "matter of public concern." Tenn. Code Ann. § 20-17-103(2–3). As defined by the statute, a "matter of public concern" includes issues relating to: "(A) Health or safety; (B) Environmental, economic, or community well-being; (C) The government; (D) A public official or public figure; (E) A good, product, or service in the marketplace; (F) A literary, musical, artistic, political, theatrical, or audiovisual work; or (G) Any other matter deemed by a court to involve a matter of public concern." Tenn. Code Ann. § 20-17-103(6). As should be evident—and as some commentators have already observed—matters of public concern are "broadly defined" under the statute. Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019). Unlike the enumerated categories pertaining to "the exercise of the right of association" and the "exercise of the right of free speech," the "exercise of the right to petition" contains no statutory qualifier requiring that the activity involve a "matter of public concern." Again, under the statute, "exercise of the right to petition" simply means a "communication" that is constitutionally protected and is "intended to encourage consideration or review of an issue" by some form of governmental body or is "intended to enlist public participation in an effort to effect consideration of an issue" by a government body. Tenn. Code Ann. § 20-17-103(4)(A–B).

In her brief on appeal, Roe separates her argument for TPPA applicability into two parts. First, Roe asserts that her complaint filed with the Title IX office is a matter of public concern, thus coming within the purview of the "exercise of the right of free speech." Second, Roe contends that her complaint implicates her "exercise of the right to petition" the government. We will address each of these arguments separately.

*Right to Free Speech Under the TPPA*

Roe's first argument on appeal concerns whether the contents of her Title IX complaint constitute a matter of public concern as it is defined in section 20-17-103(6) of the TPPA. In her brief, Roe asserts that by filing a complaint with MTSU's Title IX office, she was exercising her right to free speech and, because the subject matter of the complaint is one of public concern, she is afforded protection under the TPPA. Specifically, she contends that the filing of her Title IX complaint is a matter of public concern under the

TPPA because sexual assault is an issue that is related to "health or safety," "community-well-being," or "[a]ny other matter deemed by a court to involve a matter of public concern." *See* Tenn. Code Ann. 20-17-103(6). Conversely, Doe contends that a matter of public concern in general must pertain to something involving "the greater good or [an] attempt to raise awareness in the community as a whole."

As noted previously, the "exercise of the right of free speech" is defined by the TPPA as a "communication made in connection with a *matter of public concern* or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3) (emphasis added). Again, the TPPA goes on to broadly define a "matter of public concern" as an issue that is related to one of the following: "(A) Health or safety; (B) Environmental, economic, or community well-being; (C) The government; (D) A public official or public figure; (E) A good, product, or service in the marketplace; (F) A literary, musical, artistic, political, theatrical, or audiovisual work; or (G) Any other matter deemed by a court to involve a matter of public concern[.]" Tenn. Code Ann. § 20-17-103 (6).

In interpreting a statute, "[w]hen the language within the four corners of the statute is unambiguous, the legislative intent must be derived from the statute's face." *Bryant v. Genco Stamping & Mfg. Co., Inc.*, 33 S.W.3d 761, 765 (Tenn. 2000) (citing *Davis v. Reagan*, 951 S.W.2d 766, 768 (Tenn. 1997)). Thus, we shall apply the "natural and ordinary meaning" to the language of a statute, unless there exists ambiguity requiring further clarification. *Id.* at 765 (citing *Davis*, 951 S.W.2d at 768). Because certain words used to define a "matter of public concern" are not expressly defined themselves, we "look to [their] usual and accepted meaning from sources of common usage." *Id.* According to Merriam-Webster, the word "health" is defined as "the condition of being sound in body, mind, or spirit," or being "free[] from physical disease or pain." *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/health (last visited June 3, 2021). Black's Law Dictionary has a similar definition of "health," defining it as "[t]he quality, state, or condition of being sound or whole in body, mind, or soul; esp., freedom from pain or sickness. BLACK'S LAW DICTIONARY 835 (10th ed. 2014). "Safety," also defined by Merriam-Webster, is "the condition of being safe from undergoing or causing hurt, injury, or loss." *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/safety (last visited June 3, 2021). Although "safety" is not expressly defined by Black's Law Dictionary, we note its definition of "safe," which includes "[n]ot exposed to danger; not causing danger." BLACK'S LAW DICTIONARY 1536 (10th ed. 2014). Accordingly, pursuant to their ordinary meanings and common usage, "health" and "safety" may involve the state or condition of a single person. Thus, for our purposes, we understand the legislature's inclusion of "health" and "safety" under the TPPA as extending to matters affecting individuals.

In interpreting the TPPA as it pertains to the current set of facts, we find that Roe's filing of her Title IX complaint is an exercise of free speech that comes within the purview

- 6 -

of the TPPA. Specifically, we find that the allegations contained in the complaint constitute an issue related to a matter of public concern as contemplated by the TPPA's definitions espoused in section 20-17-103(6). In addressing Doe's argument that a matter of public concern *must* involve something pertaining to "the greater good or [an] attempt to raise awareness in the community as a whole," we look to the plain language provided by the statute itself. We first note that section 20-17-103(6)(B) includes "community well-being" as an issue that may constitute a "matter of public concern" under the TPPA. This inclusion of "community" clearly evinces the legislature's intention to expand the issue of "well-being" to an entire community, as argued by Doe. However, this is only *one* of several possibilities regarding what constitutes a "matter of public concern." We find it counterintuitive to extend the "community well-being" definition to every category enumerated in section 20-17-103(6) when it is only expressly carved out as one potential option. Thus, although it is true that section 20-17-103(B) includes issues related to "community well-being" as constituting a matter of public concern, we reject Doe's contention that the statute only mandates that an issue involve the "community as a whole." Indeed, we are of the opinion that, if the legislature intended to restrict the application of "health or safety" under the TPPA to the limited parameters argued by Doe, it would have done so. Instead, the legislature merely provided that a "'matter of public concern' includes an issue related to health or safety." Therefore, as required by the rules of statutory construction, we find ourselves beholden to the "natural and ordinary meaning" of the language provided to us by the legislature. *See Bryant*, 33 S.W.3d at 765 (citing *Davis*, 951 S.W.2d at 768). Thus, as we interpret it, Roe's Title IX complaint constituted a matter of public concern as it related to an issue concerning "health or safety."

In further support of our analysis, we point to other courts who have interpreted almost identical provisions in their jurisdictions' anti-SLAPP statutes. First, we note the position taken by the Texas Court of Appeals in *Cavin v. Abbott*, 545 S.W.3d 47 (Tex. Ct. App. 2017), wherein a daughter and her husband ("the Abbotts") brought an action against her parents ("the Cavins"), alleging defamation, among other things. Specifically, the Abbotts predicated their suit on the Cavins' alleged defamatory communications with the Abbotts' families, friends, and employers. *Id.* at 50–53. The Cavins filed a motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"), contending that their "numerous statements about the Abbotts' mental health or 'abuse' met the TCPA's definition of the 'exercise of the right of free speech' because they were 'communication[s] made in connection with a matter of public concern,' namely 'health or safety.'" *Id.* at 54. The trial court denied their motion, finding the claims "are not matters of public concern."

*Id.*

On appeal, the Abbotts contended that her parents' communications involved a "'private' family dispute and conduct that was actionable as 'private torts,'" rather than ones involving "matters of public concern." *Id.* at 61. The Texas Court of Appeals ultimately rejected this argument, explaining:

Although the Abbotts' arguments might have greater viability under the more conventional understandings of "matters of public concern" in either constitutional jurisprudence or ordinary usage, it remains that the TCPA has prescribed a specific definition of "matter of public concern" requiring, as applicable to this case, only that "an issue relat[e] to . . . health or safety," without further elaboration or qualification

. . .

[I]n *Lippencott* [*v. Whisenhunt*], the supreme court held that the court of appeals had "improperly narrowed the scope of the TCPA by ignoring the Act's plain language and inserting the requirement that communications involve more than a 'tangential relationship' to matters of public concern." Likewise, the court continued, "[t]he TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same; rather, TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature."

. . .

Under these precedents, we must reject the Abbotts' invitation to read the TCPA's definition of "exercise of the right of free speech" and "matter of public concern" more narrowly than the ordinary meaning of their words as written. All the Legislature has required is that appellants' communications be "made in connection with a matter of public concern," and a "matter of public concern" includes "an issue related to . . . health or safety." As appellants urge, the subjects of mental illness or domestic abuse plainly fall within the ordinary meaning of "health" or safety," and it is now clear that such "health" and "safety" under the TCPA includes that of private parties embroiled in an otherwise-private dispute far removed from any public participation in government. Consequently, appellants' "communication[s] made in connection with" those subjects qualify, as a matter of law, as the "exercise of the right of free speech" under the TCPA definition.

*Id.* at 61–64 (internal citations omitted).

More recently, the District of Columbia Court of Appeals addressed a similar issue, noting that the District's own statute

expansively defines an '[i]ssue of public interest' to encompass issues that

- 8 -

'relate[] to' a set of wide-ranging, and somewhat nebulous, categories, among them 'health,' 'safety,' and 'environmental, economic, or community well-being.' This drafting choice indicates both that issues of public interest should be liberally interpreted and that the statements need not explicitly refer to a qualifying topic.

*Saudi Am. Pub. Relations Affairs Comm. v. Inst. for Gulf Affairs*, 242 A.3d 602, 611 (D.C. Ct. App. 2020). Taking the reasoning of the above decisions into consideration and noting our own legislature's decision to define a "matter of public concern" as including issues related to "health or safety," we decline to consider a narrower interpretation than the one provided to us by the clear statutory language of the TPPA.

Based upon our own reading of the TPPA's language and the guidance provided by courts similarly posed with the question now before us, we conclude that sexual assault is clearly an issue related to "health or safety," as those terms are commonly understood. As a result, we conclude that Roe's Title IX complaint is protected activity under the TPPA and constitutes a matter of public concern within the parameters of the TPPA.

### Right to Petition Under the TPPA

The TPPA defines the "exercise of the right to petition" as a "communication that falls within the protection of the United States Constitution or the Tennessee Constitution and: (A) Is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body." Tenn. Code Ann. § 20-17-103(4). According to the TPPA, "communication" is "the making or submitting of a statement or document in any form or medium, including oral, written, audiovisual, or electronic." Tenn. Code Ann. § 20-17-103(1). Although "governmental body" is not defined within the TPPA, we interpret it to include public universities, such as MTSU in the underlying matter. Unlike the right of free speech, the right to petition does *not* require that the matter be one of public concern.

Roe contends that her Title IX complaint involves a protected communication made to a state or other governmental body and thus constitutes the exercise of the right to petition as defined by the TPPA. In his brief, Doe argues that "communication to a governmental body alone is not enough to activate the TPPA" and that "[t]here must also be a *truthful statement that concerns the public good* and not a private matter between two people." (citing Tenn. Code Ann. § 20-17-101 et. seq.) (emphasis in the original). In support of his statement, Doe merely cites Tennessee Code Annotated section 20-17-101 et. seq., but we find no support in the statute itself for this position.[5] In further addressing

_____

[5] We are unclear as to what Doe is relying on for this proposition. We note that his reference to

- 9 -

this argument, we also note that nowhere in the TPPA's discussion of the "exercise of the right to petition" does there exist this purported requirement that there must be a "truthful statement that concerns the public good." Therefore, we respectfully decline to accept Doe's incorporation of this additional language into the statute. As made clear by the rules of statutory construction, "[j]ust as we may not overlook or ignore any of the words in a statute, we must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011) (internal citations omitted) (citing *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 658 (Tenn. 2005); *Howell v. State*, 151 S.W.3d 450, 457–58 (Tenn. 2004)). Instead, based on our plain reading of the TPPA, the right to petition merely requires there to be a communication that is either intended to elicit consideration or review by a governmental body or intended to "enlist public participation" to effectuate such consideration. *See* Tenn. Code Ann. § 20-17-103(4).

In consideration of the foregoing, we conclude that Roe's actions constitute her "right to petition" under the TPPA. Here, Doe filed suit against Roe partially based on Roe's complaint of sexual assault to MTSU's Title IX office. MTSU, as a state-funded university, clearly qualifies as a governmental body. Doe concedes this point, stating in his brief that "[t]here is no question that MTSU is a state university and therefore qualifies as a type of governmental body." However, he continues by adding that "[w]hether MTSU is the type of governmental body envisioned by the TPPA is unclear." We first note that, although the TPPA does not expressly define "governmental body," we find no distinction in the statute between the numerous forms of governmental bodies. As such, we find no reason why MTSU does not constitute a governmental body as contemplated by the TPPA. Again, Doe concedes it is a governmental body and our reading of the statute does not reveal any exclusions for public universities funded by the state. Moreover, we also conclude that Roe's Title IX complaint constitutes a "communication" under the TPPA. In filing her Title IX complaint, Roe made a statement regarding sexual assault allegations surrounding an encounter with Doe. We find this to be sufficient to constitute the "making or submitting of a statement or document in any form or medium." *See* Tenn. Code Ann. § 20-17-103(1). Thus, we conclude that Roe asserted her right to petition in the present matter by filing her complaint with MTSU's Title IX office and that this activity is protected under the TPPA.

### Effect On the Trial Court's Proceedings

Once a party petitioning for dismissal under the TPPA has made a prima facie case that the legal action against them is "based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association," then the court

---

"public good" may be referring to the "matter of public concern" requirement under the "right to free speech" and "right of association." However, as we have noted here, the "right to petition" does not require that the matter be one of "public concern." As such, we find this contention to be without merit.

- 10 -

"shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a)(b). If the petitioning party thereafter "establishes a valid defense to the claims in the legal action," then the court "shall dismiss the legal action." Tenn. Code Ann. § 20-17-105(c). Therefore, even though a petitioning party's speech may potentially trigger the TPPA's protections, the party who initiated the legal action is not prevented from pursuing his or her action, rather the burden shifts to the party filing the complaint to make a prima facie case for each element of his cause of action.

Here, the trial court denied Roe's motion to dismiss on the ground that it did not qualify as protected activity under the TPPA. This Court having now determined that Roe's act of filing a complaint with MTSU's Title IX office constitutes both an exercise of her right to free speech as well as her right to petition pursuant to the TPPA, we conclude that Roe satisfied her initial burden of making a prima facie case that the Doe's legal action against her is "based on, relates to, or is in response to" her exercise of her right to free speech and her right to petition. *See* Tenn. Code Ann. § 20-17-105(a). Thus, we reverse the trial court's order denying Roe's motion to dismiss pursuant to the TPPA as it pertains to Roe's Title IX complaint on the ground that it did not qualify as protected activity under the TPPA. Because we are reversing the trial court's dismissal of Roe's motion, the burden-shifting mechanism under the statute will now take effect and Doe is now charged with establishing a prima facie case for each essential element of his claim as it pertains to Roe's Title IX complaint. *See Kruger v. Daniel*, 2013 WL 5339143, at *5 (Sept. 17, 2013) (citing *Am. Traffic Sols. Inc. v. City of Bellingham*, 260 P.3d 245, 249 (Wash. Ct. App. 2011)) (finding that the petitioning party had satisfied their burden and remanding the matter to the trial court for a determination of whether the plaintiff had met his burden of showing probability of prevailing on his claim).

Taking the above into consideration with our understanding of Tennessee's own anti-SLAPP statute, we remand the matter back to the trial court for a determination regarding whether there is a prima facie case for Doe's claims against Roe insofar as they pertain to her Title IX complaint pursuant to Tennessee Code Annotated section 20-17-105(b).

## CONCLUSION

Based on the foregoing, we reverse the trial court's finding that the TPPA is not applicable to Roe's filing of a complaint with MTSU's Title IX office and remand for additional proceedings not inconsistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

- 11 -